THE HON. GEORGE R. MILBURN,[2]

1—Term expired January 7, 1901.
2—Qualified January 7, 1901.

MORRISON, APPELLANT v. CLARK, ET AL., RESPONDENTS.

[No. 1246.]

[Submitted July 6, 1900. Decided December 17, 1900.]

*Corporations—Failure To Commence Business—Forfeiture of Charter—Constitutional Provisions—Construction—Estoppel.*

(515).

1. Under Rev. St. 1879, Secs. 244, 245, providing that on filing a required certificate the persons signing it shall be a body corporate, and may acquire realty necessary to carry on the operations named in the certificate, the failure of a mining company which has filed such certificate to hold any meetings of its stockholders, and omission to commence business, will not invalidate a conveyance of mining claims to the corporation; for neither such failure nor omission dissolved the corporation, or invalidated the proceedings already taken, under which it became a corporation.

2. Const. 1889, art. 15, Section 1, providing that all existing charters or grants of special or exclusive privileges under which the grantees shall not have organized or commenced business in good faith at its adoption shall thereafter have no validity, does not affect a mining company incorporated under general laws, though it had omitted *to commence business prior to the adoption of such constitution*, since such section only annulled private charters or special grants then existing, under which the corporations thereby authorized had not organized.

3. *Semble:* In the absence of fraud, accident, and mistake, a grantor, having described his grantee as a corporation in a deed of conveyance, is estopped from denying that it was a corporation at that time.

*Appeal from District Court, Deer Lodge County; Theodore Brantly, Judge.*

ACTION by Alexander M. R. Morrison against William A. Clark and others. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

*Mr. J. E. Healy*, for Appellant.

*Messrs. J. L.* and *M. L. Wines*, for Respondents.

**MR. JUSTICE PIGOTT** delivered the opinion of the Court.

The plaintiff has appealed from a judgment entered against him upon his failure to plead further after a demurrer to the complaint had been sustained. Eliminating allegations not material to the case as presented, as well as mere legal conclusions, and confining our inquiry to the points made in this court by counsel for the plaintiff, the questions arise out of the following facts admitted by the demurrer: On July 8, 1886, the plaintiff and one Napton delivered to the Golden Gate Mining Company, a corporation formed under the provisions of Chapter XV of the Fifth Division, General Laws of the Revised Statutes of Montana, 1879, their deed conveying to it certain lode-mining claims owned by them as tenants in common. The certificate of association or articles of in-

corporation had been duly filed in the proper offices, but neither at the time when the deed was delivered, nor at any time before November 8, 1889, when the constitution of Montana was finally adopted, had a meeting of the stockholders or directors of the Golden Gate Mining Company been held; nor did the company ever commence business, in good faith or otherwise. In 1894 two of the defendants recovered a judgment against the Golden Gate Mining Company upon a promissory note executed by it, and the property so conveyed by the plaintiff and Napton was afterwards sold under execution to the judgment creditors. The company was not made a party to the action. The plaintiff prays that the deed from him to the company be declared void, and that the judgment and execution sale be set aside, and the defendants decreed to be without right in or lien upon the property so theretofore granted to the Golden Gate Mining Company.

The contention of the plaintiff is thus stated by his counsel: "The complaint proceeds upon the theory that the corporation went out of existence upon the adoption of the state constitution, the 8th day of November, 1889, and that all subsequent acts mentioned in the complaint were null and void; that the deed from plaintiff became of no force or virtue; that the note given was void; that the sale was void, and that Clark & Bro. have the sheriff's certificate of sale to property which belongs to the plaintiff, and hold an adverse claim thereto against him, thereby casting a cloud upon the title of the plaintiff to the property,—that is, conceding, for the sake of the argument, that the facts stated show that the corporation had a de facto existence prior to the adoption of the constitution." There are, therefore, but two questions to be determined, the first being whether the Golden Gate Mining Company had a legal existence as a corporation at the time the plaintiff made the grant to it.

1.   It should seem that, in the absence of fraud, accident, and mistake, the plaintiff, having described the Golden Gate Mining Company as a corporation in the deed of conveyance, ought to be estopped from denying that it was a corporation

at that time; but, however this may be, Sections 244 and 245 of Chapter XV, *supra,* provide that when the certificate required by the former section shall have been duly filed the persons who signed and acknowledged it, and their successors, shall be a body politic and corporate in fact and in name, and by the name stated in the certificate shall have succession, and be capable of acquiring by purchase or otherwise, and holding or conveying by deed or otherwise, any real or personal estate whatever which may be necessary to enable it to carry on the operations named in the certificate. Failure to hold any meeting of the stockholders or directors and omission to commence business in no wise prevented the Golden Gate Mining Company from becoming a corporation, nor did either omission, or both of such omissions, operate to dissolve the corporation, or invalidate its acts or proceedings already taken, under which it had become a corporation. By the conveyance it became invested with whatever title the plaintiff possessed.

2. The other question is: Did the Golden Gate Mining Company cease to exist as a corporation on November 8, 1889? Counsel for the plaintiff asserts that the corporation went out of existence upon the adoption of the constitution, and cites Section 1 of Article XV of that instrument to support the assertion. The section ordains that "all existing charters, or grants of special or exclusive privileges, under which the corporations or grantees shall not have organized or commenced business in good faith at the time of the adoption of this constitution, shall thereafter have no validity." Even if this Section was intended to apply to corporations formed under general incorporation acts, we are satisfied, upon the plainest principles, that it did not have the effect, either at law or in equity, of devesting such corporations of title to property, and reinvesting the grantors therewith; whether the section would of its own force have worked the destruction of such corporations, or would have affected only the validity of corporate acts performed after the Constitution was adopted, is a question that need not be considered. By the transfer from the plaintiff the Golden Gate Mining Company acquired the

title then in him, and the section quoted does not purport to take away from a corporation falling within its provisions title to property theretofore acquired by it.  It is probable, however, that the precise point which the counsel for the plaintiff desires to make is, that the corporation ceased to exist upon the adoption of the Constitution, and that therefore the Golden Gate Mining Company was not and could not have been the party defendant in the action purporting to be against it wherein judgment was entered and a sale made of the property.  To this question we direct our attention.  We are of the opinion that the section does not refer to corporations formed by virtue of compliance with the general laws providing for their organization.  The charter of such a corporation consists of the general laws under which it is formed, coupled with the articles of association or agreement adopted in conformity with them.  Prior to 1867, when congress prohibited the legislative assembly of the territory of Montana from granting private charters or special privileges (Section 1889 of the Revised Statutes of the United States), the assembly had by special laws granted many private charters for corporations, and a multitude of special privileges to natural persons.  Some of the charters and grants were for specified periods, while others were not limited as to duration, and were therefore perpetual.  Existing "charters," as the term is used in Section 1, means much the same as existing "grants of special or exclusive privileges," the former referring more particularly to corporations.  Without expressing any views in respect of the effect of the section upon corporations theretofore created and formed, and then in being, by virtue of special charters, or of its effect upon the rights of natural persons to whom had been granted special privileges, we are of the opinion that the section, in so far as its purpose need now be inquired into, was intended to annul all private charters or special grants then existing under which the corporations thereby authorized had not organized—that is, been formed— or commenced business in good faith before the adoption of the constitution.  The section has nothing to do with corpor-

ations formed under authority of the general laws; such corporations are organized by a compliance with the provisions of general laws permitting corporations to be formed. A compliance with these laws results, of itself, in the organization of the corporations. Such organization has no reference to the internal proceedings of the corporation, such as a meeting of stockholders and the like; it means the formation or birth of the body corporate. On the other hand, a special or private charter purporting to create a corporation does not necessarily organize it,—in order that the corporation be organized, there must be an acceptance of the charter, and a compliance with whatever the special law may require. The word "organize" as used in Section 1, is not appropriate, and was not employed, to describe what corporations formed under general laws must do before the adoption of the constitution in order to preserve their franchises, for such corporations had already been organized, by virtue of the filing in the proper offices of the certificates required. That Section 1 was not designed to include within its provisions corporations formed and existing under general laws would seem to be countenanced by Section 2 of Article XV, which, after prohibiting the legislative assembly from granting, extending, or amending by special law any charter of incorporation, enjoins upon it the duty of providing "by general law for the organization of corporations hereafter to be created." To hold that Section 1 was designed to invalidate, for failure to organize (in the sense of electing directors, and the like) or commence business before the adoption of the Constitution, the charters of corporations formed under the general laws, we must declare that the framers of the Constitution intended to annul the charters of corporations so failing, although such charters were obtained by filing the certificates of incorporation on the day next proceeding the 8th of November, 1889. The section is not to be so interpreted. It follows that the Golden Gate Mining Company, for aught that appears in the complaint, continued to exist as a corporation after the adoption of the Constitution.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY, having tried the case in the court below, does not participate in the foregoing decision.