DAILY, RESPONDENT, v. MARSHALL ET AL., DEFENDANTS;
MILLS, APPELLANT.

(No. 3,246.)

(Submitted April 19, 1913.   Decided May 14, 1913.)

[133 Pac. 681.]

*Corporations—Annual Reports—Failure to Make—Liability of
Directors — Complaint — Sufficiency — Collateral Attack —
Estoppel — Statutes — Constitutionality — Evidence — Admissibility.*

Corporations—Directors—Annual Reports—Failure to Make—Complaint.
    1.   One who seeks to hold directors of a corporation liable for failure
    to comply with the provisions of section 3850, Revised Codes, as
    amended (Laws 1909, Chap. 140), relative to filing the annual report
    therein specified, must allege facts and circumstances clearly showing
    that the liability has attached, nothing being presumed in favor of the
    pleader.
Same—Complaint—Sufficiency—Construction—Implication.
    2.   Since, under section 3833, Revised Codes, a corporation for profit
    must have a capital stock, an allegation that a concern was organized
    and operated for profit implies that in order to have any legal ex-
    istence it must have had a capital stock; hence, under the rule that
    whatever is necessarily implied or reasonably to be inferred from an
    allegation in a pleading is to be taken as directly averred, the allega-
    tion, in an action of the character referred to in paragraph 1, *supra,*
    was sufficient as against the objection that it did not directly aver that
    the corporation had a capital stock.
Pleading and Practice—Complaint—Insufficiency—Mode of Attack.
    3.   For purposes of attack on a complaint for insufficiency, a motion
    for judgment on the pleadings, an objection to the introduction of
    evidence, and a motion for nonsuit raise only such questions as arise
    upon a general demurrer.
Corporations—Statutes—Failure to Observe—Dissolution—Collateral Attack.
    4.   After a corporation has come into existence as provided by section
    3825, Revised Codes, failure to observe the requirements prescribed by
    section 3829 *et seq.,* relative to the adoption of by-laws, the election
    of directors and officers, *etc.,* though rendering the corporate franchise
    and privileges subject to forfeiture under section 3892, by affirmative
    action by the state, does not *ipso facto* work a dissolution of it or
    lay its corporate capacity open to attack collaterally by a private
    citizen in a controversy between him and the corporation.
Same—Duties of Directors—Estoppel.
    5.   A corporation cannot, after having been engaged in business ap-
    parently in good faith, avoid liabilities incurred under the corporate
    name, on the ground that its directors had not, in the conduct of its
    private affairs, observed the forms of law in perfecting its organization
    and that therefore it had ceased to exist as a corporation; nor can
    a director thereof, whether properly chosen or not, after taking an active
    part in the conduct of its business, deny its corporate being on such
    ground, in order to escape personal liability under section 3850, *supra,*
    for failure to file the annual report therein required.

Same—Statutes—Constitutionality.

6. Section 3850, *supra, held* not unconstitutional as casting "liabilities and burdens upon domestic corporations from which foreign corporations are exempt," the penalty for failure to file the annual report being placed upon the officers and directors and not upon the corporation.

Same—Statutes—Strict Construction.

7. Section 3850, *supra,* is penal only in the sense that it creates a liability not known to the common law, and therefore must be strictly construed.

Same—Constitution—Directors—Penal Statutes.

8. A fine within the meaning of section 20, Article III, of the Constitution, which declares that excessive fines, *etc.,* shall not be inflicted, is a penalty exacted by the state for a criminal offense; therefore, such provision has not any application to the penalty imposed upon directors of a corporation for neglect to file the annual statement required by section 3850, Revised Codes, as amended.

Same—Documentary Evidence—Admissibility.

9. Papers signed by defendant as director which tended to show that his corporation had been engaged in doing business as such and that he and his associates had acted in the capacity of directors, were properly admitted in evidence as showing use of the corporate franchise.

Same—Existence—Question for Court, When.

10. The question whether a corporation was in existence *de jure* or *de facto* was one of law for the court, where the evidence did not present a disputed question of fact.

*Appeal from District Court, Missoula County; F. C. Webster, Judge.*

ACTION by John R. Daily against Thomas C. Marshall, Thomas N. Marlowe and W. P. Mills. Judgment for plaintiffs and defendant Mills appeals from it and an order denying his motion for a new trial. Affirmed.

*Mr. Frank A. Roberts,* and *Messrs. Gunn, Rasch & Hall,* for Appellant, submitted a brief; *Mr. Roberts* and *Mr. Carl Rasch* argued the cause orally.

The liability of the appellant for the respondent's claim and demand is sought to be established under the provisions of the Act of 1909 (Laws 1909, p. 217), but in order to do so, it was incumbent upon the plaintiff, as was said by the court of appeals of New York in the case of *Whitney* v. *Cammann,* 137 N. Y. 342, 33 N. E. 305, to "allege and prove affirmatively every fact and circumstance upon which his right to recover depends, and nothing will be presumed in his favor." And, as was stated by Judge Thompson in his work on Corporations (2 Thompson on

Corporations, 2d ed., par. 1337) : "It would require no judicial determination to establish the rule that there could be no liability on the part of the directors or trustees unless the corporation came strictly within the terms of the statute." Inasmuch as the statutory requirement to file annual reports is applicable only to corporations "having a capital stock," it was necessary for the plaintiff to allege in his complaint, *inter alia,* that the Missoula Palace Market was a corporation coming within the description of that class of corporations upon whom it has been made obligatory to file such reports. (See *Wethey* v. *Kemper,* 17 Mont. 491, 43 Pac. 716; *Marshall* v. *Barr,* 27 App. Div. 97, 50 N. Y. Supp. 116; *Church* v. *Butterfield,* 19 Misc. Rep. 265, 44 N. Y. Supp. 381; *Anfenger* v. *Anzeiger Pub. Co.,* 9 Colo. 377, 12 Pac. 400.)

There was not the slightest pretense on the part of any of the incorporators to comply with the statutory requirements necessary to enable the corporation to act in a corporate capacity or use its corporate franchise. The mere filing of the articles of incorporation did not confer upon the Missoula Palace Market, or its incorporators, the power or authority to transact business as a corporation. There never was an attempt made to organize the company in compliance with the law; the concern never at any time was anything but a corporation on paper; there was no user whatever of any corporate functions after the filing of the articles of incorporation, and on August 2, 1907, its corporate existence came to an end by virtue of section 3892 of the Revised Codes, the provisions of which are self-executing, and a failure to organize within the time limited by its provisions terminates the existence of the corporation. (*Kaiser Land & Fruit Co.* v. *Curry,* 155 Cal. 638, 103 Pac. 341; *Farnham* v. *Benedict,* 107 N. Y. 159, 13 N. E. 784; *In re Brooklyn, Q. C. & S. R. Co.,* 185 N. Y. 171, 77 N. E. 994; *Los Angeles Ry. Co.* v. *City of Los Angeles,* 152 Cal. 242, 92 Pac. 490; *Hawley* v. *Bonanza Queen Min. Co.,* 61 Wash. 90, 111 Pac. 1073.) Without organizing, the corporation remains a mere form, without substance or vitality, and the statute fixes the time within which it must "put on the habiliments of a corporation," or cease to exist. (*Walton* v.

*Oliver*, 49 Kan. 107, 33 Am. St. Rep. 355, 30 Pac. 172.    See, also, *Nehama Coal Co.* v. *Settle*, 54 Kan. 424, 38 Pac. 483; *Carolina etc. Ry. Co.* v. *McCown*, 84 S. C. 318, 66 S. E. 426 (citing *Walton* v. *Oliver, supra*); *Watson* v. *Albany etc. Ry. Co.*, 111 Ga. 10, 36 S. E. 324; *Whetsone* v. *Crane Bros. Mfg. Co.*, 1 Kan. App. 320, 41 Pac. 211; *Wechselberg* v. *Flour City Nat. Bank*, 64 Fed. 90, 26 L. R. A. 470, 12 C. C. A. 56.)

The only evidence of apparent corporate action by the Missoula Palace Market were the reports filed in January, 1908 and 1909, and a notice of a stockholders' meeting, published on January 8, 1910.    But this did not prove, or tend to prove, the existence of either a *de jure* or a *de facto* corporation.    In the case of *Milwaukee Gold Extraction Co.* v. *Gordon*, 37 Mont. 209, 95 Pac. 995, this court enumerated the requisites of proof necessary to establish the existence of a *de facto* corporation.    The absence of any one of the above requirements defeats the claim. (*Farmers' Mutual* v. *Reser*, 43 Ind. App. 634, 88 N. E. 349.) As in the Milwaukee Gold Extraction Company case, so here there is a complete failure of proof with respect to two of the prerequisites.    The Missoula Palace Market was never attempted to be organized as a corporation, and it never did, nor attempted to do, any business as such.    (See *Martin* v. *Deetz*, 102 Cal. 55, 41 Am. St. Rep. 151, 36 Pac. 368; *Kirkland* v. *Kille*, 99 N. Y. 390, 2 N. E. 36; *Wall* v. *Mines*, 130 Cal. 27, 62 Pac. 386; *Emery* v. *De Peyster*, 77 App. Div. 65, 78 N. Y. Supp. 1056.)

A corporation *de facto* must be established by the proof of the existence of some law under which a corporation with the powers assumed might lawfully be created, together with the user by the alleged corporation of the rights claimed to be conferred by such law.    The acts showing such user must be definitely corporate acts and not such as can be performed by a partnership or an individual.

Not only was it incumbent upon the plaintiff to show that the Missoula Palace Market was a legally organized corporation, but it also devolved upon him to prove that his claim was a corporate debt, for the payment of which the corporation had become liable as such.    (*National Park Bank* v. *Remsen*, 43 Fed. 226;

s. c., 158 U. S. 337, 39 L. Ed. 1008, 15 Sup. Ct. Rep. 891; *Jones* v. *Barlow,* 62 N. Y. 202; *Rector etc. of Trinity Church* v. *Vanderbilt,* 98 N. Y. 170; *Gold* v. *Clyne,* 134 N. Y. 262, 17 L. R. A. 767, 31 N. E. 980.) As was held by this court in *Farrell* v. *Gold Flint Min. Co.,* 32 Mont. 416, 80 Pac. 1027, a corporation acts through its board of directors as an entity, and not through the individuals who compose such board, and evidence that three directors acknowledged the justness of a claim and agreed that it should be paid did not establish an obligation against the corporation, in the absence of proof that they constituted a majority of the board, or that they acted otherwise than in their individual capacity. To the same effect: *Wagner* v. *St. Peter's Hospital,* 32 Mont. 206, 79 Pac. 1054; *Brown* v. *Valley View Min. Co.,* 127 Cal. 630, 60 Pac. 424; *Gashwiler* v. *Willis,* 33 Cal. 11, 91 Am. Dec. 607, 3 Morr. Min. Rep. 516; *Clement* v. *Young-McShea Amusement Co.,* 70 N. J. Eq. 677, 67 Atl. 82; *Donoghue* v. *Indiana etc. Ry. Co.,* 87 Mich. 13, 49 N. W. 512; *Hamlin* v. *Union Brass Co.,* 68 N. H. 292, 44 Atl. 385; *Citizens' Securities Co.* v. *Hammel,* 14 Cal. App. 564, 112 Pac. 731; *Extension Gold M. & M. Co.* v. *Skinner,* 28 Colo. 237, 64 Pac. 198.

Section 3850 of the Revised Codes, as amended, is in conflict with, and violative of, section 11, Article XV, of the Constitution of Montana, in that it imposes liabilities and burdens upon domestic corporations from which foreign corporations are exempt. (See *Uihlein* v. *Caplice Commercial Co.,* 39 Mont. 327, 102 Pac. 564; *Criswell* v. *Montana Central Ry. Co.,* 18 Mont. 167, 33 L. R. A. 554, 44 Pac. 525.)

If this were a case where the liability or burden imposed upon domestic corporations could not also legally be imposed upon foreign corporations, or, if imposed, could not be enforced, then the constitutional provisions would probably be held to have no application, as was done in *State* v. *Thomas Cruse Savings Bank,* 21 Mont. 50, 45 L. R. A. 760, 52 Pac. 733. But the decision of the supreme court of the United States in *Huntington* v. *Attrill,* 146 U. S. 657, 36 L. Ed. 1123, 13 Sup. Ct. Rep. 224, makes the rule laid down in the *Thomas Cruse Savings Bank Case* inapplicable here. As said by this court in *Lewis* v.

*Northern Pac. Ry. Co.,* 36 Mont. 207, 92 Pac. 469, a foreign corporation "cannot occupy any higher ground than a domestic corporation engaged in the same kind of business."

The section is also in conflict with, and violative of, section 20, Article III, of the Constitution of Montana, in that it imposes an excessive fine and inflicts unusual punishment. The penalty inflicted for the failure to file the annual statement is that the directors of the corporation shall personally be liable for all of the debts then existing or which may thereafter be incurred. It will be noticed that there is no limit to the penalty. That it is a penalty cannot be disputed, for this court has so held many times. (See *Gans* v. *Switzer,* 9 Mont. 408, 24 Pac. 18; *Teitig* v. *Boesman Bros. Co.,* 12 Mont. 404, 31 Pac. 371; *Elkhorn Tea Co.* v. *Mining Co.,* 16 Mont. 322, 40 Pac. 606; *Wethey* v. *Kemper,* 17 Mont. 491, 43 Pac. 716; *State Savings Bank* v. *Johnson,* 18 Mont. 440, 56 Am. St. Rep. 591, 33 L. R. A. 552, 45 Pac. 662.) Is not the practical effect of this section the imposing of excessive fines and the infliction of unusual punishment within the spirit of said constitutional provision?

*Mr. A. N. Whitlock,* and *Mr. Harry H. Parsons,* for Respondent, submitted a brief; *Mr. Whitlock* argued the cause orally.

While we admit that under the laws of this state there may be corporations with or without capital stock, we contend that section 3833 of the Revised Codes shows that corporations for profit must be corporations having capital stock. Since the section provides that such corporations must be conducted by a board of directors and such board must be possessors or holders of stock therein, the conclusion seems so obvious that further argument is unnecessary. In view of the provisions of said section, we submit that the allegation in plaintiff's complaint, "that at all times herein mentioned, the Missoula Palace Market was, has continued to be, and is, a corporation, organized and operated for profit under the laws of the state of Montana," was sufficient.

Appellant seems to rely upon the case of *Marshall* v. *Barr,* 27 App. Div. 97, 50 N. Y. Supp. 116, in which the point raised was almost identical with the one under consideration, but upon

close examination it will be seen that in this case there was no allegation whatever that the corporation was a stock corporation as required in order to bring it within the statute, nor was there any allegation from which it could be reasonably inferred that the corporation was such a corporation. In *Union Bank of Buffalo* v. *Keim,* 52 App. Div. 135, 64 N. Y. Supp. 1070, a case decided in the same jurisdiction two years later, may be found a case practically identical with the case at bar. This case was an action against a director to enforce liability under a statute providing that directors of corporations other than railroad or moneyed corporations should be liable for corporation debts on failure to file annual reports. Section 2 of the same statute provided that stock corporations should be moneyed, transportation or business corporations. It was held that an allegation that the defendant director was a director of a business corporation was sufficient. To the same effect may be cited *Acker* v. *Richards,* 63 App. Div. 305, 71 N. Y. Supp. 929; *Boynton* v. *Sprague,* 100 App. Div. 443, 91 N. Y. Supp. 839. The foregoing argument makes it unnecessary to deal with the nicer question which would have been presented had there been no section 3833. But even if such a case were presented, it might well be contended that inasmuch as plaintiff alleges a failure on the part of defendants to comply with the requirements of section 3850, that was sufficient to raise a presumption in favor of the pleader that the corporation was one coming within this section, and that the defendant had the duty of pleading that this corporation was exempt from the section. (*Harmon* v. *Fox,* 31 Mont. 324, 78 Pac. 517; *Acker* v. *Richards, supra.*)

It is our contention that under a general incorporation law similar to ours, where the statute does not make or specify other prerequisites, corporate existence and the right to do business as a corporation date from the time the secretary of state delivers his certificate, as provided in section 3825. This is certainly so where there has been strict compliance in good faith with all the requirements preceding the issuance of the certificate. A few of the leading cases will be sufficient to substantiate the

general proposition just stated: *Middleton* v. *Arastraville Min. Co.*, 146 Cal. 219, 79 Pac. 889; *Fayetteville St. Ry. Co.* v. *Aberdeen R. R. Company*, 142 N. C. 423, 9 Ann. Cas. 683, 55 S. E. 345; *Rose Hill & E. R. Co.* v. *People*, 115 Ill. 133, 3 N. E. 725. To the effect that subscription to the capital stock is not a prerequisite to incorporation or to the doing of business as a corporation, see *National Bank* v. *Texas Inv. Co.*, 74 Tex. 421, 12 S. W. 101; *Johnson* v. *Kessler*, 76 Iowa, 411, 41 N. W. 57; *Thornton* v. *Balcom*, 85 Iowa, 198, 52 N. W. 190; *Chicago, K. & W. R. Co.* v. *Commissioners of Stafford Co.*, 36 Kan. 121, 12 Pac. 593. On the point that mere failure to elect directors does not invalidate, see *Drake* v. *Herndon*, 122 Ky. 206, 91 S. W. 674. On the general point that incorporation dates from the time articles were filed, see *State* v. *Rotwitt*, 18 Mont. 87, 44 Pac. 409; *Badger Paper Co.* v. *Rose*, 95 Wis. 145, 37 L. R. A. 162, 70 N. W. 302; *Mokelumne Hill Canal & Min. Co.* v. *Woodbury*, 14 Cal. 424, 73 Am. Dec. 658; *Sentinel Co.* v. *Meiselbach Motor Wagon Co.*, 144 Wis. 224, 140 Am. St. Rep. 1007, 128 N. W. 861, 862.

It is true that there were many irregularities in the organization of the corporation and the conducting of its affairs after it became one; but these irregularities, such as the failure to adopt by-laws, elect directors, and the like, were simply directory provisions. If our contentions on that point should not prevail, we submit that these irregularities, and in fact all irregularities or objections arising after the corporation has sufficiently complied with the law to entitle it to receive its certificate, and has received such certificate, as here, are at most only causes of forfeiture which are not self-executing, but may be taken advantage of only by the state, in a direct proceeding instituted for that purpose. (*Murphy* v. *Wheatley*, 102 Md. 501, 63 Atl. 62; *Arkansas etc. Ry. Co.* v. *St. Louis etc. Ry. Co.*, 103 Fed. 747; *Jones* v. *Dodge*, 97 Ark. 248, 133 S. W. 828; *Cluthe* v. *Evansville etc. Ry. Co.* (Ind.), 95 N. E. 543; *Cheraw & Chester R. R. Co.* v. *White*, 14 S. C. 51; *Merrick* v. *Van Santvoord*, 34 N. Y. 208; *In re Shakopee Iron & Brass Wks.*, 37 Minn. 91, 33 N. W. 219; *Van Wyck* v. *Knevals*, 106 U. S. 360, 27 L. Ed. 201,

1 Sup. Ct. Rep. 336; *Toledo & Ann Arbor R. R. Co.* v. *John-son,* 49 Mich. 148, 13 N. W. 492; *In re Kings County Elevated R. R. Co.,* 105 N. Y. 97, 13 N. E. 18.)

Where an action is brought against the director of a corpora-tion, on a corporate liability, he is estopped to deny the valid incorporation of the company, where it is shown that he had held himself out as a director, and has transacted corporate business as such. (*Fitzpatrick* v. *O'Neill,* 43 Mont. 552, Ann. Cas. 1912C, 296, 118 Pac. 273; *Corey* v. *Morrill,* 61 Vt. 598, 17 Atl. 840; *Tanner* v. *Nichols,* 25 Ky. Law Rep. 2191, 80 S. W. 225; *Parrott* v. *Byers,* 40 Cal. 614, 13 Morr. Min. Rep. 505; *Marshall Fdy. Co.* v. *Killian,* 99 N. C. 501, 6 Am. St. Rep. 539, 6 S. E. 680.) We contend that defendant Mills, by his conduct throughout all the dealings between the plaintiff and Missoula Palace Market, brings himself within the doctrine of the cases cited above.

Appellant further contends that it was incumbent upon plain-tiff to show not only that the Missoula Palace Market was a corporation, but that plaintiff's claim was a corporation debt. Most of the transactions in connection with the running of the Missoula Palace Market were, it is true, carried on by the de-fendant Mills, but the evidence shows that all the other directors either agreed to or acquiesced in all that was done; they took no action to disaffirm his acts. That is sufficient to show cor-porate action. (*Farrell* v. *Gold Flint Min. Co.,* 32 Mont. 416, 80 Pac. 1027; *Fitzpatrick* v. *O'Neill,* 43 Mont. 552, Ann. Cas. 1912C, 296, 118 Pac. 273; *Salem Iron Co.* v. *Consolidated Iron Mines,* 112 Fed. 239, 50 C. C. A. 213; *Miller* v. *Matthews,* 87 Md. 464, 40 Atl. 176; *Sherman* v. *Fitch,* 98 Mass. 59.) Under cir-cumstances like those in the present case, formal action by the directors as a board is not necessary. (*G. & B. Min. Co.* v. *First Nat. Bank,* 95 Fed. 23, 36 C. C. A. 633; *Blood* v. *La Serena Land & Water Co.,* 134 Cal. 361, 66 Pac. 317.)

As to the constitutionality of section 3850, attacked on the ground that it violates section 20, Article III, of the Constitu-tion: A fine is a precautionary penalty, exacted by the state for some criminal offense. (*Southern Exp. Co.* v. *Common-*

*wealth,* 92 Va. 59, 41 L. R. A. 436, 22 S. E. 809; *State* v. *Missouri Pac. R. R. Co.,* 64 Neb. 679, 90 N. W. 877; *City of Hudson* v. *Granger,* 23 Misc. Rep. 401, 52 N. Y. Supp. 9; *People* v. *Nedrow,* 122 Ill. 363, 13 N. E. 533.) Section 3850 does not come within the rule of those cases. It is penal in its nature only in the sense that it requires strict construction. (*Manhattan Trust Co.* v. *Davis,* 23 Mont. 273, 58 Pac. 718; *Huntington* v. *Attrill,* 146 U. S. 657, 36 L. Ed. 1123, 13 Sup. Ct. Rep. 224; *Davis* v. *Mills,* 99 Fed. 39; *Flash* v. *Conn.,* 109 U. S. 371, 27 L. Ed. 966, 3 Sup. Ct. Rep. 263; *Fitzgerald* v. *Weidenbeck,* 76 Fed. 695.) There is nothing harsh or oppressive in its requirements.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action by respondent to recover from appellant the sum of $5,347.13, alleged to be due on account of goods, wares and merchandise sold and delivered to the Missoula Palace Market, a corporation, organized and existing under the laws of Montana. The theory upon which appellant is sought to be held is, that, as president and director of the corporation, he failed to file, or have filed, in the office of the clerk and recorder of Missoula county, the place where the corporation has its principal place of business, for the year 1910 the report required by section 3850 of the Revised Codes. On August 2, 1906, the appellant, W. P. Mills, filed with the county clerk of Missoula county articles of incorporation of the "Missoula Palace Market." These were executed and acknowledged by Mills, Thomas C. Marshall and Thomas N. Marlowe. Thereafter a certified copy was filed with the secretary of state, and there was duly issued by him a certificate under the seal of the state. The articles recited that Mills, Marshall and Marlowe were the directors having charge of the corporation during the first three months of its existence; that its corporate stock was $3,000, divided into 3,000 shares of one dollar each, and that each of the incorporators was a subscriber for one share. The stock was declared nonassessable but was to be fully paid when issued. It does not appear that the directors formally organized

by the election of officers or the adoption of by-laws, or that an election of directors was thereafter had. No certificates of stock were thereafter issued. On December 12, 1907, the appellant Mills entered into a written contract with one J. D. Watts, wherein he represented himself to be the owner of all the capital stock of the corporation, and agreed to sell to Watts three-fourths of it for the sum of $3,000. The writing provided that Watts should have charge, management and conduct of the business of the corporation, the same being the "butcher and meat business now carried on" in Missoula. Watts was to receive a salary of $125 per month, and he and Mills were to divide "the proceeds or dividends of said business in the proportion of their holdings." Watts took charge at once and conducted the business until March 6, 1910. He did not pay the note given to Mills as the purchase price under the terms of the agreement. He never received any shares of stock. Prior to Watts' connection with the business, Mills was manager and, according to his own testimony, sole owner of it until it was closed up by an attachment by himself in March, 1910. From its establishment until Watts took charge, and thereafter until it was closed up, the business was conducted in the corporate name. When Watts assumed charge an indebtedness of about $2,200 had been incurred. Checks issued by him were signed with the corporate name, by Watts himself or his daughter, who was the bookkeeper. On January 17, 1908, Mills verified an annual statement such as was required by the statute (Rev. Codes, sec. 3850), signed by himself, Marshall and Marlowe, and caused it to be filed with the clerk and recorder of Missoula county, wherein it was recited that the Missoula Palace Market is "a corporation organized and existing under the laws of Montana," and that Mills was the president and a director of it; that Watts was its general manager; and that Marshall was its secretary. A report reciting the same facts, verified by Mills, was filed for record on January 19, 1909. In each of these reports is the statement that "the amount of capital stock actually paid in cash is the sum of $3,000." The testimony given by Mills at the trial was in part as follows: "Q. Who was

doing business before Mr. Watts got there? A. The Missoula Palace Market it was called. Q. What is the company of which you were president part of the time and Mr. Watts part? A. The business ran there, we called it the Missoula Palace Market. Q. Who was manager when Watts came? A. I was. * * * Q. Where did you get the money to pay that rent with? A. Why, he took it out of the corporation, I guess. * * * Q. Did you ever call a meeting or advertise for a meeting? * * * A. I know the secretary—Marshall—called a meeting. * * * We met several times; Col. Marshall, Mr. Watts and myself. * * * I was trying to get Mr. Watts to settle the business up; I was being told I might be held responsible. * * * I think I met Mr. Daily about January, 1910. * * * I told him not to give any more credit to the Market. * * * The meat market of which Mr. Watts was in charge did business up to the time that I attached it." Touching the contract between himself and Watts he testified: "That paper was made out in that form as security; I transferred the entire property to Mr. Watts for $3,000. The understanding was that I sold Mr. Watts this property for $3,000, that he was to have absolute control of it; that he was to allow me to remain as a quarter owner that I might, as security, have some control of the shop, while I verbally was never to receive anything from it except the original cost. When he paid that $3,000 it was to be his, any day he wanted to pay the $3,000." The plaintiff testified: "Q. Tell what Mr. Mills said in relation to the corporation. A. He said that he was willing to give me all he could get out of the Missoula Palace Market, but he didn't want to go down in his pocket and give any more."

In his affidavit to obtain the attachment in his action against the corporation, it was stated by Mills that "the said John D. Watts on or about the 12th day of December, 1907, became the manager of the business of the defendant corporation, Missoula Palace Market, and continued in that capacity until about the 6th day of March, 1910," when his "authority as said manager was severed and terminated." This was brought about by a letter to Watts from Mills, Watts being "requested to stay away

from the Market and to receive no more mail * * * belonging to the Missoula Palace Market." The attachment suit was subsequently dismissed, and Mills' attorney took possession of the assets of the concern. On January 8, 1910, Marshall, with the consent of Mills, published a notice in the "Daily Missoulian," calling a meeting of the "stockholders of the Missoula Palace Market." The notice stated that the meeting was to be the annual meeting for the election of directors for the ensuing year. It was signed by Mills as president and director. It does not appear whether a meeting was held pursuant to this notice. The business had been conducted in a leased building, the lease running to the corporation by name. This lease was renewed in March, 1910. At one time Watts had some stationery printed for the corporation. By mistake the printer designated Watts as the proprietor instead of manager. This was made use of during the course of the business. No annual report for the year 1910, as required by section 3850, *supra,* as amended by the Act approved March 11, 1909 (Laws 1909, p. 217), was filed by the president or directors of the corporation, or by any director thereof. From November, 1909, and up to March 9, 1910, there became due from the Missoula Palace Market for goods, wares and merchandise sold and delivered to it by respondent, the sum of $5,347.13. Demand was made by respondent upon Mills for payment. Upon his refusal to pay this action was brought, resulting in a verdict and judgment for respondent. These appeals are from the judgment and an order denying appellant's motion for a new trial. There was substantially no conflict in the evidence, the appellant himself being the principal witness examined by respondent.

1. The first contention made is that the complaint does not state a cause of action, in that it does not allege that the Missoula Palace Market is a corporation having a capital stock. The allegation on this subject is "that at all times herein mentioned the Missoula Palace Market was, has continued to be and is a corporation, organized and operated for profit," *etc.* Amended section 3850, *supra,* declares: "Every corporation, having a capital stock, except banks, trust companies and build-

ing and loan associations, shall annually, within twenty days
from and after the thirty-first day of December, file in the office
of the clerk of the county in which the principal place of busi-
ness of such corporation is situated, a report which shall state,''
[1] *etc.* The argument of counsel for appellant is that, since
this section is penal in character, it is incumbent upon one who
seeks to hold directors of a corporation liable upon failure to
comply with it, to allege and prove affirmatively every fact and
circumstance upon which his right to recover depends, nothing
being presumed in his favor. The rule invoked is undoubtedly
sound. It was recognized by this court in *Gans* v. *Switzer,* 9
Mont. 408, 24 Pac. 18, and *Wethey* v. *Kemper,* 17 Mont. 491,
43 Pac. 716. While the liability imposed by the statute is often
called penal, it is not so in the sense in which that term is com-
monly used. It is so only in the sense that the liability was
not known at the common law but is entirely of statutory origin.
For this reason the legislative declaration of the rule may not
be construed to include cases which do not fall clearly within
its terms. (2 Morawetz on Corporations, 2d ed., sec. 908.) In
every case, therefore, the pleading should allege facts and cir-
cumstances showing that the liability has attached.

Under section 3833 the corporate powers, business and prop-
erty of all corporations must be controlled by not less than
[2] three nor more than thirteen directors to be elected from
among the holders of stock, or, when there is no capital stock,
from among the members of such corporation. Among other
things, it provides: ''Directors of corporations for profit must
be holders of stock therein in an amount to be fixed by the by-
laws of the corporation, except those named in the articles of
incorporation for the first three months, who shall be directors
until their successors are elected and qualified. Directors of all
other corporations must be members thereof.'' This section,
and also section 3822, recognizes that there may be corporations
without a capital stock; yet, since under section 3833 a corpora-
tion for profit must have a capital stock and stockholders, the
allegation that the Missoula Palace Market was organized and
operated for profit, clearly and necessarily implies that it is

of the class which must, in order to have any legal existence at all, have a capital stock.    This renders the complaint sufficient within the rule stated in *County of Silver Bow* v. *Davies*, 40 Mont. 418, 107 Pac. 81, *viz.*, that whatever is necessarily implied or reasonably to be inferred from an allegation in a pleading is to be taken as directly averred.    (See, also, *Harmon* v. *Fox*, 31 Mont. 324, 78 Pac. 517.)

The sufficiency of the pleading was questioned in the trial court by general demurrer, by motion for judgment on the pleadings, by objection to the introduction of evidence, and [3] by motion for nonsuit.    If open to attack at all, it was by special demurrer for indefiniteness and not by general demurrer or any of the other methods resorted to, each of which raises, so far as the sufficiency of the complaint is assailed, only such questions as arise upon general demurrer.

2. The next contention is that after the certificate had been issued by the secretary of state, no steps whatever were taken by the incorporators to organize the corporation by the adoption of by-laws, the election of directors, the organization of the board, the election of officers, or the observance of other similar requirements prescribed by sections 3829, 3830, 3832, 3833, 3834, 3836 and 3848 of the Revised Codes.    Hence, it is argued that, though the articles were properly executed and filed and the certificate issued by the secretary of state, the failure to observe these requirements resulted automatically in the death of the corporation by the forfeiture of its franchise at the end of one year, with the result that thereafter it could not transact business as a corporation.    Counsel rely upon section 3892, Revised Codes, which provides: "If a corporation does not organize and commence the transaction of its business or the construction of its works within one year from the date of its incorporation, its corporate powers cease.    The due incorporation of any company, claiming in good faith to be a corporation under this Part, and doing business as such, or its right to exercise corporate powers, shall not be inquired into, collaterally, in any private suit to which such *de facto* corporation may be a party; but such inquiry may be had at the suit of the state on in-

formation of the attorney general." In order to ascertain the scope and meaning of the first provision of this section it is necessary to notice what steps must be taken to bring a corporation into existence and how a dissolution of it or a forfeiture of its franchise may be wrought. Section 3807 provides: "Private corporations may be formed by the voluntary association of any three or more persons in the manner prescribed in this Article." Under section 3825 a corporation may be formed for any of the purposes enumerated in section 3808, (1) by the preparation and filing of the articles with the clerk of the county in which the principal business of the company is to be transacted, and (2) by filing with the secretary of state a copy thereof certified by the clerk. The secretary must then issue to the corporation his certificate that a copy of the articles, containing a statement of the facts required by section 3825, has been filed in his office. "Thereupon the persons signing the articles and their associates and successors shall be a body politic and corporate by the name stated in the certificate," *etc.* Section 3905 declares: "A corporation is dissolved: (1) By the expiration of the time limited by its charter; or, (2), by a judgment of dissolution, in the manner provided by the Code of Civil Procedure * * * ; (3) By an Act of the legislative assembly." By section 3898 a sale by the corporation of all of its property *ipso facto* operates as a dissolution. By reference to section 6944 it will be seen that an action lies in the name of the state to dissolve a corporation in the several instances therein enumerated, among which are: "2. When it has forfeited its privileges and franchises by nonuser"; and "3. When it has committed or omitted an act which amounts to a surrender of its corporate rights, privileges and franchises."

Considering all of these provisions together, we think the intention of them is obvious, *viz.:* that when the steps required [4] by section 3825 shall have been observed, the corporation comes into existence; that failure to observe the requirements as to the adoption of by-laws, the subsequent election of directors, the election of officers, and the like (sec. 3829 *et seq., supra*), renders the franchises and privileges subject to forfeit-

ure, but does not *ipso facto* work a dissolution nor permit question to be made as to the corporate capacity in a collateral way by any private citizen in a controversy between him and the corporation. In other words, after the corporation has come into existence as provided by section 3825, it continues to exist for the period fixed by the statute (*Gans* v. *Switzer, supra*), or until by affirmative action the state has had a forfeiture judicially declared. This is clearly the import of the last provision of section 3892, for it says so in terms the meaning of which cannot be mistaken; and this is in full accord with the theory of the inhibition in section 3810, which provides: "One who assumes an obligation to an ostensible corporation, as such, cannot resist the obligation on the ground that there was in fact no such corporation until the fact has been adjudged in a direct proceeding for the purpose." This must be deemed to be the legislative intention in enacting these several provisions, or else the question whether there is or is not a corporation is left open to investigation in every case in which an ostensible corporation seeks to avoid liability as such, or whenever, as here, it is sought by one or more directors to avoid liability for their omission to observe the requirements of the statute. Therefore, construing the first provision of section 3892, together with the last, in the light of the other provisions referred to, it can be assigned no other effect than to fix a rule by which judicial decision shall be controlled whenever the question of corporate capacity is properly presented by the state itself.

The legislature may make such requirements as it deems proper as conditions precedent to the exercise of corporate power. For illustration: It may require the payment of a license tax as a condition precedent to the doing of any business by the corporation. A failure to comply with such a requirement *ipso facto* works a forfeiture, and the corporation ceases to exist. In such a case a judgment of a court is not necessary to render the forfeiture effective, because the statutory declaration is self-executing. (*Kaiser Land & Fruit Co.* v. *Curry,* 155 Cal. 638, 103 Pac. 341.) So, also, it may declare that a failure to comply with a requirement imposed as a condition subsequent shall

*ipso facto* work a forfeiture; such statutes are also self-executing. (*Los Angeles Ry. Co.* v. *City of Los Angeles,* 152 Cal. 242, 125 Am. St. Rep. 54, 15 L. R. A. (n. s.) 1269, 92 Pac. 490.) Ordinarily, however, requirements to be observed subsequent to the creation of a corporation, even though forfeiture for failure to comply with them is declared to be the penalty, are not self-executing. The only acts by which the incorporators notify the public of the creation of a corporation are the records required by section 3825, *supra.* When these have been completed, the corporation becomes, as to those who deal with it, a living, active, responsible entity. The requirements to be observed for the perfection of the organization, the election of officers, and the like, pertain exclusively to its private affairs of which the public can have no information; and in the absence of statutory provisions to the contrary, or of inquisition at the instance of the state, are to be deemed directory only. (10 Cyc. 223; 1 Machen on the Law of Corporations, sec. 163.) Therefore, while the courts differ as to whether particular enactments such as the one found in section 3892, *supra,* should be held self-executing or only directory, they quite generally agree that different results flow from the failure of the directors or officers of the corporation to do those acts which are required as conditions precedent, and those which are required as conditions subsequent. The failure to observe the first results *ipso facto* in forfeiture; omission with reference to the second merely exposes the corporation to the peril of dissolution upon inquisition by the state. Until the forfeiture has been judicially declared at the instance of the state, the corporate existence continues. (*Murphy* v. *Wheatley,* 102 Md. 501, 63 Atl. 62; *Brown* v. *Wyandotte & S. E. Ry.,* 68 Ark. 134, 56 S. W. 862; *Briggs* v. *Cape Cod Ship Canal Co.,* 137 Mass. 71; *Cluthe* v. *Evansville etc. Co.* (Ind.), 95 N. E. 543; *Cheraw & Chester R. R. Co.* v. *White,* 14 S. C. 51; *Toledo & Ann Arbor R. Co.* v. *Johnson,* 49 Mich. 148, 13 N. W. 492; *In re Kings County Elevated R. R. Co.,* 105 N. Y. 97, 13 N. E. 18; *Arkansas & O. R. Co.* v. *St. Louis & S. F. R. Co.,* 103 Fed. 747.) The principle applicable is the same as when a grant of land is made subject to forfeiture of title upon

failure to perform conditions subsequent. The forfeiture can be enforced only at the instance of the grantor himself by judicial action, or, if the grantor is the state, by legislative action also. (*Van Wyck* v. *Knevals*, 106 U. S. 360, 27 L. Ed. 201, 1 Sup. Ct. Rep. 336; *Bybee* v. *Oregon & C. R. Co.*, 139 U. S. 663, 35 L. Ed. 305, 11 Sup. Ct. Rep. 641.)

Accordingly, therefore, when the corporation has regularly been brought into existence, it is not deprived of the right to exercise corporate functions by the failure of the directors, designated by the statute to perfect the organization, to issue stock (*Fayetteville etc. Ry. Co.* v. *Aberdeen R. Co.*, 142 N. C. 423, 9 Ann. Cas. 683, 55 S. E. 345); or to obtain subscriptions for its stock (*National Bank of Texas* v. *Investment Co.*, 74 Tex. 421, 12 S. W. 101; *Johnson* v. *Kessler*, 76 Iowa, 411, 41 N. W. 57; *Thornton* v. *Balcom*, 85 Iowa, 198, 52 N. W. 190; *Chicago K. & W. R. Co.* v. *Commissioners of Stafford Co.*, 36 Kan. 121, 12 Pac. 593); or to elect directors (*Drake* v. *Herndon*, 122 Ky. 206, 91 S. W. 674; *Middleton* v. *Arastraville Min. Co.*, 146 Cal. 219, 79 Pac. 889; *Morrison* v. *Clark*, 24 Mont. 515, 63 Pac. 98), even though the taking of these various steps is necessary to the proper use of the franchise. It would be a gross injustice to those who propose to deal with an ostensible corporation to make it incumbent upon them first to ascertain whether in the conduct of its private affairs its directors have proceeded in strict conformity with all the statutory requirements as to the organization of the board of directors, the election of officers, *etc.*, at the peril of being cast in actions subsequently brought by them to enforce their rights against it, upon a plea by it that it has no capacity to be sued. In our opinion it was the purpose of the legislature in enacting section 3892, *supra*, to prohibit inquiry in any private civil action into the question whether the ostensible corporation has a legal existence, further than to ascertain whether the requirements prescribed by section 3825, *supra*, have been observed. If this action had been brought by the Missoula Palace Market as a corporation, to collect an indebtedness due it from the respondent, the latter could not, under section 3810, *supra*, have made defense on the ground

that there is no such corporation. On the other hand, since the [5] . corporation has been engaged in business apparently in good faith, it could not, by the same rule, avoid liability on the ground that its directors had not in the conduct of its private affairs observed the forms of law in perfecting the organization, and therefore that it had ceased to exist as a corporation. It could not be heard to say that it is not such in fact on the ground that the persons who have assumed to act as its directors have omitted to do anything looking to the perfection of its organization or to the conduct of its business according to the forms of law.

Counsel have devoted some space in their briefs to a discussion of the question whether the Missoula Palace Market should be regarded as a corporation *de jure* or *de facto.* We shall not undertake to determine which it is. The rule denying the right to collateral attack applies to the one as well as to the other. The following cases are sufficient for illustration: *Merges* v. *Altenbrand,* 45 Mont. 355, 123 Pac. 21; *Miller* v. *Newburg Orrel Coal Co.,* 31 W. Va. 836, 13 Am. St. Rep. 903, 8 S. E. 600; *Dean* v. *Davis,* 51 Cal. 406; *Gunderson* v. *Illinois T. & S. Bank,* 199 Ill. 422, 65 N. E. 326; *Johnson* v. *Corser,* 34 Minn. 355, 25 N. W. 799; *Emery* v. *De Peyster,* 77 App. Div. 65, 78 N. Y. Supp. 1056; *City of Ashland* v. *Wheeler,* 88 Wis. 607, 60 N. W. 818; 2 Thompson on Corporations, sec. 1124.

Upon the undisputed facts, so far as concerns the public, the business of the corporation has been conducted in the name of the Missoula Palace Market, as a corporation. Liabilities have been incurred under this name and discharged in the same way. To an outward observer or anyone dealing with it, it has exhibited all the characteristics of a legal person living the life and pursuing the calling for which it was created, according to the course prescribed by law. The appellant has made it serve his purpose. He must therefore be held to bear the penalty which attention to duty on his part as a director would have enabled him to avoid, and this, too, whether he was properly chosen by the board as such director or not. In the section

cited from Mr. Thompson, *supra*, it is said: "It follows naturally and logically from what has been said heretofore, that persons acting as directors or other corporate officers without right, or where they assume to act rightfully by color of office, are subject to all the personal liability which attaches to the rightful incumbents of such offices, whether by the common, the equitable, or the statute law. *De facto* directors and officers cannot plead that they are not such *de jure* in order to escape liability to the corporation or to its creditors for their acts as such, whether such infirmity in their title arises from the fact that they were irregularly elected, or were not legally chosen, or were ineligible at the time they were elected. This principle is illustrated in cases holding directors personally liable for the debts of the corporation where they fail to file an annual report as required by statute; in such cases it is sufficient to show that the directors or trustees were such *de facto* at the time the debt was contracted."

3. It is next contended that amended section 3850 is repugnant to section 11 of Article XV of the Constitution of Montana, in [6] that it imposes liabilities and burdens upon domestic corporations from which foreign corporations are exempt. This section provides: "   *   *   *   No company or corporation formed under the laws of any other country, state or territory, shall have, or be allowed to exercise, or enjoy within this state any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of the state." The plain purpose of this provision is to restrain the legislature from granting to foreign corporations rights and privileges which cannot be enjoyed by domestic corporations of like character under similar circumstances. (*Criswell* v. *Montana Central Ry. Co.*, 18 Mont. 167, 33 L. R. A. 554, 44 Pac. 525; *State* v. *Thomas Cruse Savings Bank*, 21 Mont. 50, 45 L. R. A. 760, 52 Pac. 733.) Within this limitation the legislature is free to impose such burdens upon domestic corporations as it sees fit. In the nature of things, exactly the same system of laws cannot be devised for both domestic and

foreign corporations. Necessarily, laws intended to apply to foreign corporations must be framed upon the theory that they are created under conditions and limitations over which the state legislature has no control. So long as it does not in framing laws discriminate against domestic corporations, its Acts will not be construed as discriminating within the inhibition of the Constitution. It is clear, however, that section 3850 does not discriminate against domestic corporations. Though in terms it imposes the duty of filing the annual report upon the corporation, it in fact imposes it upon the officers and directors and exacts the penalty for nonobservance from them individually, and not from the corporation. In effect, therefore, it is nothing more nor less than a requirement that the officers and directors shall give to the public, from time to time, a statement of the financial affairs of the corporation, at the peril, in case of disobedience, of being held personally for the liabilities which they have permitted the corporation to incur under their management. This is a complete answer to counsel's contention. (*First Nat. Bank* v. *Weidenbeck,* 97 Fed. 896, 38 C. C. A. 131.)

4. It is said that the statute is violative of section 20 of Article III of the state Constitution, which declares: "Excessive bail shall not be required or excessive fines imposed, or cruel and unusual punishments inflicted." The argument is that since there is no limit to the liability which may be incurred by a failure of the officers and directors to comply with the statute, and since this court has declared the liability penal in its nature (*Gans* v. *Switzer, supra; Wethey* v. *Kemper, supra; Teitig* v. *Boesman Bros. & Co.,* 12 Mont. 404, 31 Pac. 371; *Elkhorn T. Co.* v. *Mining Co.,* 16 Mont. 322, 40 Pac. 606; *State Savings Bank* v. *Johnson,* 18 Mont. 440, 56 Am. St. Rep. 591, 33 L. R. A. 552, 45 Pac. 662), the result is the imposition of excessive fines and the infliction of unusual punishments within the meaning of the constitutional inhibition. As already pointed out, [7] the statute is not penal in the sense in which that term is generally used. It is so only in the sense that it creates a liability which was not known at the common law and there-

fore must be construed strictly. The very purpose of the legal device known as a corporation is to enable natural persons to engage in business enterprises through the agency of others without incurring personal liability. The extent of immunity is fixed by the law providing for the creation of the artificial body or person, and such a provision as the one in question, being a part of the law of creation, declares the immunity of those who manage the business, *viz.:* the officers and directors, dependent upon their observance of the conditions imposed by it. They may render their immunity effective by doing this; otherwise they are conclusively presumed to have assented to stand good as sureties for all the liabilities which they have permitted the corporation to assume. In considering the statute in force in 1894 (Comp. Stats. 1887, Fifth Div., sec. 460), the court in *Fitzgerald* v. *Weidenbeck*, 76 Fed. 695, said: "But, while the statutory liability of trustees has some of the characteristics of a penalty, and attaches upon such kind of default or omission of duty on the part of the trustees as is frequently in like statutes punished by the infliction of a penalty, yet, under this statute, such liability of the trustees is not a penalty, but the withdrawal, as to them, as a consequence of their failure to perform certain duties, of the exemption from personal liability which the statute allowing the incorporation of the company would otherwise afford them, and an allowance to the creditors of the corporation at the time of such default or during such omission of duty, of the further remedy of having the right to proceed in the collection of their debts, directly against the trustees from whom such exemption is withdrawn."

A fine, in the sense in which the term is used in the Constitution, is a penalty exacted by the state for some criminal offense. [8] The provision of the Constitution has no application to the liability involved here.

5. It is argued that the court erred in admitting in evidence [9] copies of the annual reports filed by appellant for the years 1908 and 1909, the affidavit on attachment in the action brought by him against the corporation in March, 1910, and

the written agreement made by him and Watts on December 2, 1907. It is argued that the only purpose for which they were introduced was to show that the Missoula Palace Market was a corporation and doing business as such; whereas its existence had been terminated by operation of law. That it was, in contemplation of law, up to March 10, 1910, a corporation we have already shown. The documents in question tended directly to show not only that it was engaged in business as such, but also that appellant and his associates were assuming to act, and were acting, as its directors. It is true that the appellant assumed to control the business as his own, his associates taking no active part in it. At the same time, they were acting ostensibly as directors of the corporation, their purpose evidently being to assist appellant by permitting him to use their names and thus the corporate franchise. The evidence was competent to show this.

6. The court submitted to the jury an instruction in which it directed them to find for the plaintiff if they believed that the respondent sold and delivered the goods, wares and merchandise, the value of which is in controversy in this case, to the Missoula Palace Market, for the reasonable value thereof, with interest from the time demand for payment had been made upon the appellant. It is argued that the court erred in withdrawing from the jury the question whether the Missoula Palace Market [10] was a corporation. As we view the evidence in the record, however, it presents no disputed question of fact requiring a finding by the jury. Whether the corporation was in existence *de jure* or *de facto* was a question for the court to determine. The court should have directed a verdict for the plaintiff. There was evidence which lent some support to the inference that, as between the appellant and Watts, the latter was to be the owner of the business upon the payment of the $3,000 note executed by him to the appellant under the contract of December 12, 1907. This, however, was a mere private, secret agreement between them. As to those dealings with Watts there had been no out-

ward change, and we think the court properly treated the evidence in this behalf as immaterial.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SANNER concurs.

MR. JUSTICE HOLLOWAY did not hear the argument and takes no part in the foregoing decision.

