FLOYD-JONES, APPELLANT, *v.* ANDERSON ET AL., RESPONDENTS.

(No. 1,863.)

(Submitted April 20, 1904.   Decided May 9, 1904.)

*Building and Loan Associations—Maturity of Contract—With-drawal of Shareholder—Settlement—Effect—Insolvency of Association — Actions Against Shareholder — Evidence—Pleadings—Denial—Sufficiency.*

1.   Where affirmative matter is pleaded in an answer, a replication thereto stating that plaintiff "has no knowledge or information concerning the allegations thereof sufficient to form a belief," is insufficient as a denial, and said allegations of the answer must be deemed admitted.
2.   In an action to foreclose a building and loan association mortgage the member's certificate of stock, and the by-laws and statements printed thereon, constituting the contract between the association and such member, were properly admitted in evidence.
3.   In an action to foreclose a building and loan association mortgage it was immaterial, on the question of the admissibility of matter which purported to be the by-laws of the association, whether it in fact constituted such by-laws or not, where it constituted a part of the written contract existing between the shareholder and the association, and was given to him by the association as the by-laws.
4.   The by-laws of a building and loan association made the secretary the custodian of its books and records, and charged him with the transaction of business relative to the issue and cancellation of stock. About the time of the maturity of A.'s stock, the secretary wrote to B., acknowledging the

receipt of dues, and stated in the letter that the five-year stock (which was the kind that A. had) contained certain burdensome conditions, and that other longer term stock had been issued, which was more advantageous to the shareholders, all but six of whom had made the exchange. *Held*, in an action to set aside a release of A.'s mortgage and to foreclose the mortgage, that the letter was admissible to show that the company was at the time transacting business, and that a definite five-year contract existed between the association and its original shareholders.

5.  Since building and loan associations do not ordinarily have outside creditors, as do general corporations, a deficiency of assets does not render them insolvent, in the proper sense of the word, but merely indicates a loss of capital stock and security, and depreciation of the stock held by the members.

6.  Insolvency is a question of fact to be proved by evidence, and is not presumed.

7.  Where a certificate of stock in a building and loan association provided that the association would pay to a shareholder the sum of $100 for each share represented thereby at the end of five years, on condition that the shareholder complied with the terms and conditions thereof, and other literature provided that the stock at maturity should cancel the mortgage, the debt of a borrowing member, who complied with all the terms and conditions of his contract, was canceled, and the mortgage which he executed to secure his loan released, at the expiration of five years.

8.  Where a member of a building and loan association has made full settlement, and withdrawn therefrom, such settlement and withdrawal cannot be set aside by the association without showing fraud or bad faith in some form.

9.  Where the contract between a borrowing member and a building and loan association has been completed, and the member has withdrawn, it is immaterial whether the contract was one which the association had the power to make.

*Appeal from District Court, Meagher County; William L. Holloway, Judge.*

ACTION by R. H. Floyd-Jones, as receiver of the Montana Loan & Savings Union of Helena, against Alma B. Anderson, individually and as administratrix of the estate of James T. Anderson, deceased, and another. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals. Affirmed.

*Mr. T. J. Walsh,* for Appellant.

Upon a building and loan association's going into the hands of a receiver for the administration of its assets upon insolvency, borrowing members must pay their mortgages in full and then take their distributive share with non-borrowing members on the final distribution of the assets. (*Leahy* v. *Associa-*

*tion,* 76 N. W. 625; *Knutson* v. *Association,* 69 N. W. 889; *Douglas* v. *Kavanaugh,* 90 Fed. 373; *Latimer* v. *Company,* 81 Fed. 776; *Weir* v. *Granite State Ass'n* (N. J. Ch. 1897), 38 Atl. 643; *Carpenter* v. *Richardson,* 46 S. W. 452; *Curtis* v. *Granite State Ass'n,* 69 Conn. 6, 36 Atl. 1023; *Rogers* v. *Raines* (Ky.), 38 S. W. 483; *Post* v. *Mechanics' Ass'n* (Tenn. Sup.), 97 Tenn. 408, 37 S. W. 316; *Brown* v. *Archer,* 1 Mo. App. Rep. 465; *Price* v. *Kendall* (Tex. Civ. App.), 36 S. W. 810; *Brown* v. *Archer,* 62 Mo. App. 277; *Tootle* v. *Singer,* 88 N. W. 446; *Columbia* v. *Schwartz,* 64 S. W. 743.)

If the association is insolvent, members who have given notice of withdrawal are entitled to no priority in the distribution. They take their *pro rata* just as do the other stockholders. (See the authorities cited above and *Coltrain* v. *Baltimore,* 110 Fed. 272.)

Any arrangement by which, after a building and loan association becomes insolvent, its officers do permit the amount to be paid on stock or purporting to be due on stock, or to which a party is entitled upon withdrawal, to be applied in satisfaction of a mortgage from the stockholder to the association, is void and ineffective as against creditors and other stockholders.

The officers have no power to enter into any such settlement at which the stock is given a value it does not possess, and have no power under such circumstances to absolve a stockholder from his obligation to bear his proportionate share of the losses of the common enterprise. (*Chapman* v. *Young,* 65 Ill. App. 131; *Callahan's Appeal,* 124 Pa. St. 138; *Cason* v. *Selduer,* 77 Va. 293; *Post* v. *Association,* 37 S. W. 216; Thompson on B. & L. Associations, 309; *Canadian* v. *Quimby,* 79 Ill. App. 105; *Young* v. *Stevenson,* 81 Ill. App. 40, 180 Ill. 608; *Rickert* v. *Suddard,* 80 Ill. App. 204, 180 Ill. 149; *Republic* v. *Swigert,* 135 Ill. 150.)

Our statute provides only for the organization of mutual building and loan associations. (Compiled Statutes, page 796, Sec. 635.) The right of a mutual building and loan association to issue such "definite contract stock," is denied upon grounds

that seem irrefragable in the following cases: *Province* v. *Interstate* (Tenn.), 58 S. W. 265; *Bertsche* v. *Association* (Mo.), 48 S. W. 954; *Schell* v. *Ass'n* (Mo.), 51 S. W. 406; *King* v. *Union* (Ill.), 48 N. E. 677; *Miller* v. *Ass'n* (Tenn.), 53 S. W. 231; *Sumrall* v. *Com'l Bldg. Trust's Assignee* (Ky.), 50 S. W. 69; *Forwood* v. *Eubank* (Ky.), 50 S. W. 255; *Reddick* v. *Assignee* (Ky.), 49 S. W. 1075; *Latimer* v. *Equitable,* 81 Fed. 776; *Leahy* v. *Association* (Wis.), 76 N. W. 625; *Columbia* v. *Lyttle* (Colo.), 66 Pac. 247; *Campbell* v. *Association* (Va.), 37 S. E. 350; *Columbia* v. *Junquist* (Wy.), 111 Fed. 645; *Gary* v. *Verity,* 74 S. W. 161; *Caston* v. *Stafford,* 92 Mo. App. 182; *Richter* v. *So. B. & L. A.,* 34 So. 562; *O'Malley* v. *Association,* 36 N. Y. Supp. 1016; *Eversman* v. *Schmitt,* 41 N. E. 139; *Latimer* v. *Equitable,* 81 Fed. 782; *Plank* v. *Indiana,* 62 N. E. 652; *Association* v. *Aichele,* 61 N. E. 11; *Association* v. *Shelton,* 61 N. E. 951; *Pioneer Ass'n* v. *Wilkins,* 85 N. W. 994; *Loan Co.* v. *Peck,* 49 S. W. 160; *Hammerquist* v. *Pioneer Ass'n,* 87 N. W. 524.

Money paid by reason of fraud or mistake can be recovered. (*Mowett* v. *Wright,* 1 Wend. 355.) If by mistake certain stock has been declared to be matured, when in fact it has not matured, equity will correct the mistake and compel restitution. (*Post* v. *Association,* 37 S. W. 216.)

The continuance of the condition of insolvency for so long a period, the forcing of a balance annually, the creation of a "dividend account" which represented nothing, undoubtedly charge the officers of the corporation *prima facie* with knowledge of its insolvency. (*Williams* v. *McKay,* 18 Atl. 824; *Cameron* v. *Kenyon-Connell Co.,* 22 Mont. 312; *Fraylor* v. *Sonora,* 17 Cal. 594; *Proster* v. *Baldwin,* 2 Ind. 374.)

*Mr. Lewis Penwell, Mr. N. B. Smith,* and *Messrs. Word & Word,* for Respondents.

MR. COMMISSIONER POORMAN prepared the following opinion for the court:

The National Loan & Savings Union was organized as a building and loan association, and was incorporated February 15, 1890. Subsequently the name was changed to the Montana Loan & Savings Union of Helena, Montana. On July 1, 1890, one James T. Anderson became the owner of forty shares of the capital stock of the association, and certificate No. 187, representing the same, was issued to him. On September 1, 1890, the said Anderson and Alma B. Anderson, his wife, borrowed $3,000 from the corporation, giving their note therefor, due sixty months after date, with five per cent. interest per annum, and five per cent. premium per annum thereon from date until paid, payable monthly. The note further provided that the shares of stock represented by certificate No. 187 "are hereby transferred and pledged to the National Loan & Savings Union as collateral security for the performance of the conditions of this obligation and of the mortgage securing the same." The note also provided for attorney's fees in case of foreclosure. The makers of the note executed to the association a mortgage on certain real estate, conditioned for the payment of the note. The certificate of stock contained the provision that the association would pay to the shareholder the sum of $100 for each share represented thereby at the end of five years, on condition that the shareholder complied with the terms and conditions thereof. The printed literature was to the effect that this would cancel the mortgage. Anderson, having complied with all the terms of his contract, demanded that his mortgage be released. On August 28, 1895, the corporation issued to him a written release under seal, delivered to him his note, and canceled his certificate of stock. This mortgage release was recorded. In 1898 the association was declared insolvent, and a receiver was appointed. Anderson having died, the receiver filed a claim against his estate for principal, interest and attorney's fees, aggregating $4,954, alleged to be due on this note and mortgage. The claim was disallowed, and this action was then brought to set aside the release of the mortgage and to foreclose it. Judgment was rendered for defendants. Plaintiff appeals from

this judgment and from the order overruling his motion for a new trial.

1.    Exceptions were taken to certain denials contained in the replication to affirmative matter pleaded in the answer. A consideration of one of these will suffice for all. The defendant, as a part of his affirmative defense, alleges the contents of some printed literature of the association. The only denial of this matter found in the replication is that the plaintiff "has no knowledge or information concerning the allegations thereof sufficient to form a belief." It is urged that this denial is insufficient under the statute.

Section 720, Code of Civil Procedure, relating to replications, provides: "Where the answer contains a counterclaim * * * the reply must contain a general or specific denial of each of the material allegations of the counterclaim, controverted by the plaintiff, or of any knowledge or information thereof sufficient to form a belief." This section of the Code was amended by the Act of February 22, 1899 (Laws of 1899, p. 142), so as to read: "Where the answer contains a counterclaim or any new matter the plaintiff * * * shall * * * reply to such counterclaim or new matter, denying generally or specifically each allegation controverted by him." This amendment eliminates from the law that part of the statute which reads, "or of any knowledge or information thereof sufficient to form a belief," and also adds to the section the statement, "or any new matter." The pleading must conform to the requirements of the statute, and where the legislature amended the law by striking out that provision which granted permission to deny by alleging a want of information, it was the undoubted intent that that form of pleading should be eliminated, so far as the same related to the replication. This form of denial is therefore insufficient as a denial, and these allegations of the answer must stand admitted to the same extent that they would be if no attempt to deny them had been made.

2.    It is claimed by appellant that the court erred in admitting in evidence this certificate of stock and the by-laws and

statements printed thereon. All these matters constituted the contract between the association and Anderson, and were therefore proper to be admitted in evidence.

It is further denied by plaintiff that that which purports to be the by-laws printed on this certificate are in fact the by-laws of this association. Whether they are in fact the by-laws of the association is immaterial. They are a part of the written contract existing between the shareholder and the association, and were given to him by the association as the by-laws, and were, for that reason, proper evidence in the case.

Certain letters were introduced, one of which was written by the secretary to another shareholder, dated April, 1895, in which the secretary acknowledged the receipt of dues, and stated that the old stock, which matured in five years, contained conditions which were deemed burdensome, and that other stock was issued to mature in seventy-eight months, and that all except six shareholders had made the exchange. He also pointed out that this was advantageous to the shareholders. In view of the fact that the by-laws make of the secretary the custodian of the books and records of the association, and charge him with the transaction of business relative to the issue and cancellation of stock, shareholders had a right to rely upon this letter as official, and it was admissible as showing that the company was at that time transacting business, and that the definite contract of maturity in five years did exist between the association and its original shareholders.

The plaintiff introduced but one witness to prove the insolvency of the association. The record contains the general statement made by the witness that the company had been insolvent "ever since after the first year that they were in business, namely, the year 1890." The only evidence appearing, however, from which this general conclusion is drawn, is the following: "At the end of each year they would balance, and say 'by dividend account' so much money. As a matter of fact they never had a dividend account. They did not have any money. Their account at the bank was always in red; that is, it was

always overdrawn. Neither did they have any real·estate or other property which the dividend account represented. In figuring the condition of the company, I figured the assets at their own value as shown by the books; full valuation of the mortgage loans on the real estate at what they valued it. On the 1st day of January, 1895, in order to make the books balance, they credited themselves up with about $15,000 undivided profits and surplus, and they did not have any. * * * Their liabilities exceeded their assets that much. The first year they were in existence they borrowed $2,300 from the First National Bank and $10,000 from Mr. Wilson. They paid off Mr. Wilson some money, but there was still a balance due him when the company went into the hands of a receiver."

It must be kept in mind that "a building and loan association" ordinarily does not have outside creditors, as do general corporations; and where there is a deficiency of assets there is no insolvency in the proper sense of the word, but merely a loss of capital stock and security, and depreciation of the stock held by the members. (Thompson on B. & L. Ass'ns, Sec. 120; note *Knutson* v. *Northwestern Ass'n,* 67 Minn. 201, 69 N. W. 889, 64 Am. St. Rep. 410; *Towle* v. *Ass'n* (C. C.), 61 Fed. 446.)

This evidence relative to the insolvency of the association is very indefinite, and possesses no claim to either precision or direction. The fact that the association was $15,000 in arrears, as shown by one of its books, on the 1st of January, 1895, is not sufficient to charge either the association or Anderson with knowledge of any insolvency either at the date the certificate was issued or the mortgage was released. There is no pretense that the $2,300 borrowed from the bank was not repaid, nor is there any attempt made to state the amount still claimed to be due to Mr. Wilson. Whether that amount is $1 or the full amount minus $1 is not stated. Insolvency is a question of fact, and must be sustained by the evidence. It is never presumed. The facts and admissions appearing in this record are conclusive that this association was transacting business up to the time that this mortgage was canceled; that it

was a going concern; that it received the payments made by Anderson on his stock; that a settlement was made with him; that his certificate was canceled, and that his mortgage was released; that a few months prior to this transaction the asso-. ciation had issued new stock, extending the time of maturity from sixty months to seventy-eight months; and that the acceptance of such new stock, however, was optional with the holders of the old stock, and Anderson did not accept the same. The trial court found that the association was insolvent on July 1, 1895, but that such insolvency was not known to it, or to Anderson, or to the defendants, until June, 1898. This finding is amply sustained by the evidence and facts admitted. There is absolutely no evidence that Anderson acted in bad faith, or knew or was charged with knowledge of any insolvency whatsoever.

At the beginning or head of this certificate of stock are the words: "Date of issue, July 1, 1890. Maturity July 1, 1895." Further on appear the statements: "This union matures its stock at a definite and stipulated time. * * * This stock has no surrender value and cannot be withdrawn until it fully matures. * * * This stock matures at a fixed and definite time. * * * This union matures its mortgages at a fixed and definite time. * * * In consideration of the admission fee, together with the agreement and full compliance with the terms, conditions and by-laws printed on the front and back of this certificate, which are hereby referred to and made a part of this contract, the National Loan & Savings Union agrees to pay to said shareholder * * * the sum of one hundred dollars for each of said shares at the end of five years from the date hereof. * * * This certificate of shares is issued to and accepted by the shareholder upon the following terms and conditions which are hereby assented to by the shareholder." The terms and conditions are sixteen in number, of which, for the purpose of this case, it is necessary to set out only the following: "(1) The shareholder agrees to pay a monthly installment of seventy cents on each share named in the certifi-

cate." "(4) The agent in all cases acts solely for the share-holder, and the union assumes no obligation for any statements other than contained in its printed literature." "(8) The by-laws attached to and indorsed on the statement are made a part and parcel thereof." "(10) The shareholder agrees to pay a cancellation fee of three dollars per share at the time of maturity of the contract, or at the time of procuring a loan. (11) The union reserves the right to require further monthly payments not exceeding twenty-five cents per share to pay off or cancel shares, and for the best interest and protection of all its members." The by-laws appearing upon the certificate require the payment of an admission fee of two dollars per share, and other requirements substantially the same as those contained in the body of the certificate, so far as the questions here presented are concerned. The printed literature of the association at the time that Anderson became a member contained this statement: "Payment of mortgages. Monthly payments made by a borrowing member on his stock, and all profits apportioned to him, are applied on his stock, which at maturity cancels the mortgage." The only fixed and definite time named in this contract for the maturity of these shares is July 1, 1895, sixty months after the date of the certificate. It appears that Anderson, on demand of the association, paid the extra twenty-five cents per share per month for fifty months.

This contract was of appellant's own framing. It was not an informal, hastily prepared memorandum, but was part of a carefully devised plan of business. The promise of the corporation was positive and unequivocal that it would, at the expiration of five years, pay to the subscriber the sum of $100 for each share. If this was intended merely as an estimate, it was an easy thing to say so. We must assume, therefore, that in thus preparing its contract the appellant intended to bind itself to the payment of the stipulated sum in the stipulated time, or it deliberately framed the instrument and issued its printed literature to deceive prospective members and borrowers with an apparent promise to that effect. We cannot assume that any

such deception was intended, but must adopt the construction placed upon this contract by the borrower—that the compliance by him with the terms and conditions thereof would have the effect of canceling his debt and releasing his mortgage at the expiration of five years. This question is elaborately discussed in *Field* v. *Bldg. Ass'n,* 117 Iowa, 185, 90 N. W. 717, from which a part of the above is copied. And see *Vought* v. *Ass'n,* 172 N. Y. 508, 65 N. E. 496, 92 Am. St. Rep. 761.

It is admitted that Anderson did comply with all these terms and conditions; that he did pay the seventy cents per share for sixty months; that he did pay the twenty-five cents per share for fifty months; that he did pay the interest and premium on his loan for the full sixty months; that he did pay the cancellation fee of three dollars per share; and it further appears from the evidence and by admissions that the association released this mortgage in regular form, delivered the note to Anderson, accepted the cancellation fee of $120, duly canceled the stock, so that Anderson from that time on was not recognized as a stockholder, and had no voice in the conduct of the company's affairs. In fact, he complied with his contract in every particular. About three years after that time it was discovered that the association was unable to mature its stock and to comply with its contract with its members, and a receiver was appointed. Nearly two years later this suit was instituted to compel Anderson or his representatives to pay the full amount of this mortgage, with interest and attorney's fees. But no offer whatsoever is made to refund to Anderson's estate the cancellation fee which he had already paid, nor to restore the certificate of stock which had been canceled, that the estate might thereby participate in the division of such funds as remained. The result of such a judgment would be that, notwithstanding Anderson had paid all that he ever agreed to pay, and had ceased to be a member of the corporation, still he must pay in the full amount of his mortgage, with interest thereon from July 1, 1895, in order that the amount to be distributed among the other shareholders might be augmented by that sum, but that

Anderson's estate should not be permitted to participate in this division, and that it would, therefore, lose all that he had paid in as dividends and as cancellation fee. Such a judgment would be inequitable.

The authorities are practically a unit in holding that, where a member of a building and loan association has made full settlement, and withdrawn therefrom, such settlement and withdrawal cannot be set aside by the association without a showing of fraud or of bad faith in some form. In *Reitz* v. *Hayward,* 100 Mo. App. 216, 73 S. W. 374, the court says: "The law, therefore, does not, in theory, permit withdrawals after an association is insolvent; but, if the surrender of stock was perfected while it was still a going concern, though in fact insolvent, it is an executed transaction, and the proceeds may be retained, unless fraud can be imputed to the withdrawing stockholder." (*Booz's Appeal,* 109 Pa. 592, 1 Atl. 36; *Strohen* v. *Association,* 115 Pa. 273, 8 Atl. 843.) "After he has been paid off on his withdrawal, and there is a final settlement between him and the society, in the absence of mutual mistake or fraud he can not be compelled to make good a deficiency occurring before the withdrawal, and discovered before the winding up of the association." (Thompson on Building Associations, p. 285, and cases; 4 Am. & Eng. Ency. Law, 1052; Endlich on Building Associations, Sec. 108; *Coltrane* v. *Association* (C. C.), 110 Fed. 281.)

It appears from the record in this case that Anderson made full settlement with this corporation, and withdrew therefrom by the cancellation of his stock years before any insolvency was discovered; and the record contains no evidence of fraud on the part of Anderson, and we cannot assume that he acted with any fraudulent intent. (Code of Civil Procedure, Sec. 3266; *Jones* v. *Simpson,* 116 U. S. 609, 6 Sup. Ct. 538, 29 L. Ed. 742.)

It is unnecessary to determine the other question raised, as to whether the corporation had the authority to issue what is termed "definite contract stock," this being a completed transaction. As was stated in *Leahy* v. *Association,* 100 Wis. 555,

76 N. W. 625, 69 Am. St. Rep. 945: "We need not concern ourselves over the question of whether, under its articles, the corporation had authority to issue this class of stock or not. The stock was issued, and accepted by the petitioner, and we cannot permit either the receiver or the holder to question its validity. It is certainly valid as between the parties so long as it does not contravene public policy and was not issued in defiance of any statutory prohibition." The principle thus announced will undoubtedly apply where the contract has been wholly executed.

We do not find any error in this cause, and think the judgment and order appealed from should be affirmed.

PER CURIAM.—For the reasonst stated in the foregoing opinion, the judgment and order are affirmed.

MR. JUSTICE HOLLOWAY, being disqualified, takes no part in this decision.

