DUNHAM, Respondent, *v.* NATURAL BRIDGE RANCH CO.
ET AL., Appellants.

(No. 8350.)

(Submitted January 10, 1944.   Decided April 4, 1944.)

[147 Pac. (2d) 902.]

*Messrs. Rockwood Brown & Horace S. Davis, Mr. Franklin S. Longan* and *Mr. Ben E. Berg, Jr.,* for Appellants,

*Mr. Charles W. Campbell* and *Messrs. Gibson & Fitzgerald,* for Respondent, *Mr. Fred Gibson* and *Mr. David B. Fitzgerald* argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

In 1928 defendant Bruffey owned certain ranch real estate and personal property, sold an undivided one-half interest in it to plaintiff for about $23,000, and he and plaintiff organized the defendant corporation, to which they transferred the property. All of the corporation's 1,000 shares of stock were issued, 500 shares to plaintiff, 499 to Bruffey, and one to a third person, all of the three stockholders being made directors. Bruffey was employed as manager and he and his two sons were paid $250 per month and their living expenses for their services. The operations were unprofitable and plaintiff advanced money from time to time which aggregated $19,000 on March 1, 1932, when the corporation issued her its note and real estate and chattel mortgages for that amount; the validity of that transaction is not questioned.

On March 1, 1934, when the principal amount of the debt was $18,060.79 and Bruffey had become the owner of the third party's

share of stock, a stockholders' meeting was held at which a renewal note and mortgages were authorized to be executed to plaintiff by the corporation for that amount, together with a contract for the sale of the corporation's property to Bruffey (subject to plaintiff's mortgages) for $30,000, payable in three years with interest. Under the contract all Bruffey's payments, less corporation income taxes and other corporate expenses, were to be paid to plaintiff upon her note and mortgages. The note, mortgages and sale contract were executed in the corporate name by plaintiff as president and Bruffey as secretary and treasurer. Bruffey thereupon took over the property personally under his purchase contract and made payments from time to time which were applied upon corporate expenses and plaintiff's note in accordance with the contract. In 1936 a renewal chattel mortgage was given.

In 1940 the note and mortgages being delinquent, plaintiff sued for the unpaid balance of principal with interest, attorney's fees and costs, naming Bruffey and his wife as claimants of interest adverse to him. Mrs. Bruffey disclaimed any interest. The defendant corporation and Bruffey defended upon the theory that under the laws of Montana a corporation's powers lapse whenever there come to be less than two stockholders, and that therefore on March 1, 1934, when the renewal note and mortgages were given, the corporation had no right to exercise the corporate powers in executing them, and that they were therefore void. Defendant Bruffey contended that what was carried on ostensibly as corporate business was therefore in reality partnership business, and that the property held in the corporation's name was really the property of the plaintiff and Bruffey. By cross-complaint he sought a partnership accounting as affirmative relief.

Thus there is no dispute that the note and mortgages represent money actually advanced by plaintiff, that the principal amount has been reduced only to $15,153.18, and that she is entitled to foreclose the mortgage if the documents are valid.

The trial court found that the note and mortgages were given

by defendant corporation and that they were delinquent, concluded that they were valid, and entered a decree of foreclosure. Bruffey has since died and the administrator of his estate has been substituted as a defendant and appellant.

While defendants specify as error various findings of fact as to the note and mortgages, the only issue raised upon the appeal is the question of law as to the validity of the documents, chiefly upon the contention mentioned above that the corporate powers were suspended at the moment when the number of stockholders fell below three. Two questions are immediately suggested; first, whether the contention is correct; and, second, whether in any event Bruffey is in a position to question the validity of the corporate acts in view of the facts that he participated in the transactions and in the execution of the note, mortgages and contract as one of the two stockholders, directors, and officers of the corporation, that he executed the purchase agreement with the corporation, took over and operated the property in accordance with the agreement, made payments under it and had the proceeds forwarded to plaintiff to apply upon the note and mortgages, and that he knew that the documents in question constituted merely a renewal of those made in 1932 when, according to a finding which appellants do not question, there were three stockholders. Appellants argue affirmatively that if there were three stockholders the corporate acts would be valid even though one of them were merely a nominal holder of stock for one of the other two. They say: "Had either Mrs. Dunham or Mr. Bruffey transferred shares to a third person *to qualify him as a third stockholder* in Natural Bridge Ranch Company, the corporation could again have functioned, it then could have made in proper case the note and mortgages described in the complaint." Thus the objection is purely technical, the equities are entirely against the defendants, and the question naturally suggests itself whether, under the circumstances, the defendant Bruffey should be heard to question the corporation's right to exercise corporate powers in the transactions and acts in which he participated and of which he accepted the benefits. Presumably the plaintiff

would have foreclosed her admittedly valid 1932 mortgage if, in 1934, defendant Bruffey had refused to concur in the renewal transactions, and it is obvious that both he and the corporate defendant received benefits from the documents whose validity is now attacked. However, it is unnecessary to consider whether in the absence of a pleading of estoppel such defense can be urged by plaintiff against the affirmative defense and cross-complaint.

The statutes of Montana provide that private corporations may be formed by at least three persons, (sec. 5902, Rev. Codes), that the articles of incorporation must be subscribed by at least three persons, (secs. 5907 and 5908, Rev. Codes), and must provide for a board of at least three directors, (sec. 5905, Rev. Codes), and that the corporate powers, business and property must be exercised, conducted and controlled by a board of at least three directors to be elected from among the holders of stock, (sec. 5933, Rev. Codes.) Defendants' argument is that since a corporation cannot be organized by less than three persons, and since there must be at least three directors all of whom must be stockholders, its authority to exercise corporate powers in the transaction of business (as distinguished from its mere corporate existence) automatically terminates when the number of stockholders falls to less than three.

But the Legislature has declared otherwise, for section 6000, Revised Codes, provides: ''* * * The due incorporation of any company, claiming in good faith to be a corporation under this code, and doing business as such, or *its right to exercise corporate powers,* shall not be inquired into collaterally in any private suit to which such *de facto* corporation may be a party; but such inquiry may be had at the suit of the state on information of the attorney general.'' In other words, where a corporation claims in good faith to be one under the laws of Montana and does business as such, neither (a) its due incorporation nor (b) its right to exercise corporate powers may be inquired into in any private suit to which it may be a party. Good faith is to be presumed and certainly there is nothing in either the pleadings or the evidence to question the corporate good faith when in 1934 the cor-

poration and both of its stockholders and directors participated in the corporate acts in question.

Consequently section 6000, Revised Codes, negatives the contention that the corporate powers automatically lapsed upon the elimination of the third stockholder; for the provision is inconsistent with a legislative intent that either its existence or its powers shall in that event automatically terminate without an inquiry by the Attorney General (*Daily* v. *Marshall,* 47 Mont. 377, 133 Pac. 681; *Barnes* v. *Smith,* 48 Mont. 309, 137 Pac. 541); on the contrary, the statute not only forbids a collateral attack but even points out the method by which a direct attack may be made.

Appellants admit that they may not question the corporate existence but contend that they may nevertheless question the corporation's right to exercise corporate powers,—in other words, its corporate capacity to act, as distinguished from its bare corporate existence. But the statute forbids not only the challenge of its existence but also the challenge of "its right to exercise corporate powers," which means its capacity to transact business as a corporation.

The transactions of corporations, actual or *de facto,* often give rise to litigation, and uncertainties peculiarly incident to such transactions are the possible questions of corporate existence and the right to exercise corporate powers. It was obviously to remove those particular uncertainties that section 6000 was enacted. Thus the question may be raised whether in fact the corporation performed the act, but not whether it had the right to exercise corporate powers in doing so.

There can be no question that the present suit is one within the purport of the statute in all essential respects. It is a private suit, the corporation is a party, has claimed in apparent good faith to be a corporation and has done business as such, and its right to exercise corporate powers by the execution of the note and mortgages sued upon is questioned by appellants. They rely upon certain statements made by this court in *Barnes* v. *Smith,* supra; *Hanson Sheep Co.* v. *Farmers' & Traders' State Bank,* 53

Mont. 324, 163 Pac. 1151, and *Scott* v. *Prescott*, 69 Mont. 540, 223 Pac. 490. However, in none of those cases was the corporation's right to exercise corporate functions questioned, and in the latter case the corporation was not even a party. Obviously the defense offered in this suit is a collateral attack by Bruffey and by the corporation itself upon the latter's "right to exercise corporate powers" by the authoriation and execution of the note and mortgages sued upon.

Of course the statute does not prevent the courts in the interest of justice from looking back of the corporate fiction in proper cases, for that is not to question the corporate powers but rather to ascertain the real parties in interest whom the corporate transactions affect. Thus in *Hanson Sheep Company* v. *Farmers' & Traders' State Bank*, supra, it was held that the statute did not preclude the court from examining into the facts under proper circumstances to determine the identity of a person who uses the name of a corporation for his own purposes, and to fix liability upon him for the corporate acts. But here there are no such equities.

Plaintiff admittedly advanced the money to the enterprise, and Bruffey handled it as manager for the corporation and not as plaintiff's partner. Both parties participated actively in the establishment and conduct of the corporation, in evidencing the debt by the note of the corporation, and in securing it by the mortgages of the corporation in whose name they themselves had placed the property and conducted the business. Admittedly the plaintiff and Bruffey were the sole and equal owners of the enterprise and of its assets. No other person was concerned and there is no equity necessitating that the courts ignore the corporate entity so as to benefit Bruffey or prejudice plaintiff by permitting Bruffey or the corporation now collaterally to attack the corporate powers and acts. Their attack being upon the right of the corporation to exercise corporate powers, and therefore upon the validity of the corporate acts thus performed, it cannot be sustained.

As this court said in *Sun River Stock & Land Co.* v. *Montana*

*Trust & Savings Bank,* 81 Mont. 222, 262 Pac. 1039, 1046, the joint enterprise may be either a corporation or a partnership but not both; it cannot constitute the members partners *inter sese* and corporation stockholders and directors as to the rest of the world. In that case this court further held that one of the members could not deny the existence of the corporation; that "the principle that shields the members from the claims of persons dealing with the corporation under such circumstances is equally efficacious to protect the members as between themselves."

Appellants further contend that the interest of the two stockholders and directors in the transaction of March 1, 1934, automatically invalidated the transactions. If that were so there would be no way out of a situation such as confronted the parties except to transfer the stock and wait until new directors and officers had been elected before negotiating with the corporation for the new note and mortgage. But such is not the law. A director occupies a fiduciary relation to the stockholders and may not enrich himself at their expense. "But this does not carry the implication that one may not demand payment of an honest debt due him from a corporation of which he is a director. Nor is there any implication that one who deals with a corporation of which he is a director deals in bad faith,—unless he gains an advantage thereby. * * * If it be assumed, as it must be here, that the debt was *bona fide,* she, as a creditor of the corporation, was entitled to enforce her claim by the same method as might any other creditor.

"* * * There is not the slightest evidence that in obtaining the written instrument plaintiff gained any advantage over the corporation, or obtained from it anything which in good conscience she should not have obtained. * * * Certain other presumptions apply to the conditions apparent here. The law presumes that private transactions have been fair and regular. (Section 10606, subd. 19, Rev. Codes 1921.) As the record does not contain any evidence of fraud on plaintiff's part we will not assume that she acted with any fraudulent intent. (*Floyd-Jones* v. *Anderson,*

30 Mont. 351, 76 Pac. 751.)'' (*Mayger* v. *St. Louis Mining & Milling Co.*, 68 Mont. 492, 219 Pac. 1102, 1105.)

The present case is still stronger. Not only is there no indication that the debt is not *bona fide* or that the plaintiff obtained any undue advantage over the corporation, but the debt and the absence of undue advantage are unquestioned. Bruffey, the only other person interested, assented to and cooperated in the transactions, and the defendants' sole reliance is upon a technicality which if given effect would perpetrate rather than cure an inequity. This case presents one of the precise situations which prompted the enactment of section 6000.

Since the defendants may not question the right of the defendant corporation to exercise corporate powers, it is obvious that they cannot be heard to assert that the corporate activities in question constituted a partnership so as to entitle Bruffey to halt the foreclosure and obtain an accounting.

The decree is affirmed.

ASSOCIATE JUSTICES ERICKSON, ANDERSON, MORRIS and ADAIR concur.