306 F.2d 937
 FIRST NATIONAL BANK IN BILLINGS, a National Banking Association, Security Trust & Savings Bank, a Corporation, and The Yellowstone Bank, a Corporation, Appellants,
v.
FIRST BANK STOCK CORPORATION, a Corporation, Midland National Bank in Billings, a National Banking Association, and Valley State Bank, an Ostensible Corporation, Appellees.
 No. 17403.
 United States Court of Appeals Ninth Circuit.
 August 14, 1962.
 
 Kirkland, Ellis, Hodson, Chaffetz & Masters, and Howard Ellis, John L. Bordes and James E. Beaver, Chicago, Ill., and Luxan & Scribner, H. J. Luxan, Jr., and A. W. Scribner, and Walter S. Murfitt, all of Helena, Mont., for appellants.
 Dorsey, Owen, Marquart, Windhorst & West, and W. F. Marquart, and Curtis L. Roy, Minneapolis, Minn., and Cooke, Moulton, Bellingham & Longo, F. D. Moulton, B. E. Longo, and W. R. McNamen, Billings, Mont., for appellees.
 Before CHAMBERS, JERTBERG and DUNIWAY, Circuit Judges.
 DUNIWAY, Circuit Judge.
 
 
 1
 Appellants, plaintiffs below, are three banks, two (one national, one state) located in Billings, Montana, and one (also a state bank) located in nearby Laurel. When suit was brought, there were two other banks open for business in Billings. One, appellee-defendant, Midland National Bank in Billings (Midland), a national bank, is a subsidiary of appellee-defendant First Bank Stock Corporation, a bank holding company. The other, Billings State Bank, not a party to this action, is controlled by Northwest Ban-corporation, another bank holding company. The purpose of this action is to prevent the opening for business of a sixth bank, appellee-defendant Valley State Bank (Valley), a Montana state bank, also a subsidiary of First Bank Stock. Jurisdiction is based upon the Bank Holding Company Act, 12 U.S.C.A. §§ 1841-1848, and the National Bank Act, 12 U.S.C.A. § 36, and upon 28 U.S.C. §§ 1331, 1337. Our jurisdiction rests upon 28 U.S.C. § 1291.
 
 
 2
 The complaint is in two counts. The first charges violation of 12 U.S.C.A. § 1842(d) and § 1843(a)(2), in that First Bank Stock has unlawfully acquired shares of, or an interest in the assets of, Valley (§ 1842(d)) or has unlawfully retained an interest in a company (Valley) which is not a bank (§ 1843(a)). The second charges violation of 12 U.S.C.A. § 36, in that Midland is unlawfully operating a branch, contrary to the provisions of Montana Revised Codes, 1947, § 5-1028.
 
 
 3
 The judgment dismisses the action on the merits, upon appellees' motion for summary judgment on both counts. The decision was based on affidavits, a pretrial order embodying some 77 paragraphs of agreed facts, depositions of certain officers of Midland, taken by appellants, and testimony of the president of one of the plaintiff banks. The court summarized the facts in its opinion, determined that there is no genuine issue of material fact, and entered judgment accordingly. We are affirming.
 
 
 4
 1. There was no violation of the Bank Holding Company Act.
 
 
 5
 As to this question, the basic facts are simple, and are all agreed to. Before the effective date of the Act, May 9, 1956, First Bank Stock desired to establish a bank in West Billings, to be located in a projected new shopping center. Its application to charter a national bank was denied by the Comptroller of the Currency on November 30, 1955. It then caused Valley to be incorporated and applied to the Montana Superintendent of Banks for an authorization, under date of November 29, 1955. (Revised Codes, Mont., 1947, §§ 5-202, 5-203). The application was opposed by appellants but was granted by the Superintendent on April 30, 1956. On that date, incorporation was completed, $300,000 was paid in ($150,000 subscribed capital and $150,000 surplus and undivided profits), the first meetings of stockholders and directors were held, stock certificates were issued, and Valley became fully qualified to do a banking business in Montana. (See Revised Codes, Mont., 1947, §§ 5-203, 5-206, 5-207). It is conceded that these steps were all taken in anticipation of the passage and effectiveness of the Bank Holding Company Act.
 
 
 6
 Thereafter, and until about August 1, 1960, Valley did not open its doors as a banking house, primarily because of delays in the establishment and opening of the shopping center. Its original shareholders were First Bank Stock (1460 shares) and three officers of Midland and one of Midland's attorneys (10 shares each). The board of directors consisted of the four individual shareholders, each of whose shares were subject to an option in First Bank Stock to repurchase them if the shareholder ceased to be a director of Valley. In August, 1956, another Midland officer became a fifth director, upon the same terms. The $300,000 was deposited in Midland, to Valley's account (Revised Codes, Mont., 1947, § 5-206). Valley's Board of Directors met monthly, at the offices of Midland or of its attorney; its correspondence went to Midland's office; it used Midland's stationery. The principal activity of the directors was watching development of the shopping center and negotiating to buy a site there for a banking house, which was finally done in June, 1959. Valley made no loans, took no deposits, and did no other business, except to invest part of its capital in a 2% time deposit in Midland, and part in Federal Home Loan Bank Notes and United States Treasury bills.
 
 
 7
 After the filing of this action, steps were undertaken to activate Valley as a bank. An independent board replaced the Midland officers, except the attorney, temporary quarters were obtained, steps were taken toward building a banking house; four employees were hired, and Valley opened on November 1, 1960. The filing of this action was a factor in the decision to take these steps.
 
 
 8
 It is thus clear that, when the Bank Holding Company Act became effective, Valley was a corporation, validly organized, with paid-in capital, surplus and undivided profits, and validly authorized to conduct a banking business under the laws of Montana. It is equally clear that it did not start to do a banking business for over four years thereafter.
 
 
 9
 Appellants argue, vigorously and at length, that two sections of the Act are violated. Section 1842(a) (2) of 12 U. S.C.A. makes it unlawful for a bank holding company, without the prior approval of the Board of Governors of the Federal Reserve System, "to acquire direct or indirect ownership or control of any voting shares of any bank * * *." No such approval has been asked for or obtained. Section 1842(d) prohibits approval of any such application "which will permit any bank holding company * * * to acquire * * * any voting shares of, interest in, or all or substantially all of the assets of any additional bank located outside the State in which such bank holding company maintains its principal office * * * unless the acquisition * * * is specifically authorized by the statute laws of the State in which such bank is located * * *". First Bank Stock's principal office is in Minnesota; Montana statute laws make no such authorization. Section 1843(a) provides that no bank holding company may, "(1) after May 9, 1956, acquire direct or indirect ownership or control of any voting shares of any company which is not a bank or (2) after two years from May 9, 1956 * * * retain direct or indirect ownership or control of any voting shares of any company which is not a bank * * *". Section 1841(c) defines "Bank" to mean, among other things, "any State Bank".
 
 
 10
 It is clear that First Bank Stock "acquired" its stock in Valley before the effective date of the Act, and that it has not "acquired" any interest in Valley since May 9, 1956, unless we are to give to the word "acquire" a meaning quite different from the usual. This we are unwilling to do.
 
 
 11
 Appellants argue that Valley did not become a "bank" until it began a banking business on November 1, 1960, and that at that time First Bank Stock "acquired" stock in a "bank". But the Act leaves the definition of a state bank to state law. (§ 1841(c), supra), and Montana law makes Valley a "bank" no later than April 30, 1956, the date of authorization. Revised Codes of Montana, 1947, Section 5-102 provides: "The word `Bank' * * * shall be construed to mean any corporation which shall have been incorporated to conduct the business of receiving money on deposit * * *". Section 5-104 defines "Commercial Bank" as "any bank authorized by law to receive deposits * * *". On April 30, 1956, Valley was, under Section 5-203, "entitled to have, possess, and enjoy all the rights and privileges conferred by this act [the Bank Act of Montana]". The Superintendent of Banks of Montana, who has very broad supervisory powers over banks, issued his authorization, has never cancelled it, although empowered to do so (Section 5-207), and, so far as appears, has always regarded Valley as a "bank". We find nothing in the Bank Holding Company Act or in Montana law compelling us to hold that, until November 1, 1960, it was not. The many cases cited by appellants in which it is held or stated that "bank" means an institution conducting a banking business, arose in contexts quite different. We have no quarrel with them, but we think them not controlling here. In considering the adoption of the Act, Congress had before it bills that would define "bank" as an institution actually conducting a banking business. (See S. 2350, Hearings Before a Subcommittee of the Senate Committee on Banking and Currency (Control of Bank Holding Companies), 84th Cong., 1st Sess., p. 17; Hearings before the Senate Committee on Banking and Currency (Bank Holding Legislation), 83rd Cong., 1st Sess., Pt. 3, pp. 267-8). The Act as adopted contains no such provision.
 
 
 12
 It is contended that the decision appealed from frustrates the purposes of the Bank Holding Company Act. To this there are several answers. One is the established rule that a statute operates prospectively only, unless a contrary intention appears. (Brewster v. Gage, 1930, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457). This rule is, for constitutional reasons, particularly applicable to penal statutes. The Act is penal. (See 12 U. S.C.A. § 1847). We find no indication that the Act was intended to be retroactive. The Act itself shows that Congress considered the matter. Section 1843(a) (2), quoted above, contains a provision prohibiting retention of stock of a "company which is not a bank." This is the only section dealing with pre-existing holdings of bank holding companies. The omission of other provisions of this sort is, we think, significant.
 
 
 13
 A second answer lies in the legislative history of the Act. This shows that Congress knew that bank holding companies were racing to beat the deadline that the Act would create. (102 Cong.Rec., Pt. V, pp. 6859-60). Yet the Act contains no language calculated to deal with these activities. Congress could have prohibited the opening, after May 9, 1956, of a bank whose stock was acquired by a holding company before that date, or could have required divestiture of such stock; it did not do so.
 
 
 14
 A third answer lies in the conduct of the Board of Governors of the Federal Reserve System, which administers the Act (12 U.S.C.A. § 1844), and which played an important part in its enactment. First Bank Stock registered as required by Section 1844. After this action was filed, First Bank Stock requested from the Board an interpretation, which was given by letter of October 12, 1960, stating:
 
 
 15
 "It is the Board's opinion that Valley State Bank became a `bank' for purposes of the Holding Company Act at the time its incorporation was completed on April 30, 1956. Therefore, retention of its stock since the passage of the Act has not resulted in retention of stock of a nonbanking organization in violation of section 4 of the Act.
 
 
 16
 "It is also the opinion of the Board that stock of Valley State Bank was `acquired' by First Bank Stock prior to the effective date of the Holding Company Act. Therefore, the contemplated opening of that Bank for business would not result in a violation by First Bank Stock of section 3 of the Act."
 
 
 17
 This interpretation, while not controlling, is entitled to substantial weight. (Skidmore v. Swift & Co., 1944, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124; United States v. American Trucking Ass'ns, 1940, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345). So far as appears, the Board still adheres to the views we have quoted.
 
 
 18
 Appellants contend that Valley ceased to be a bank because its powers ceased under Revised Codes Mont.1947, § 15-808, a part of the general corporation law of Montana, in that it did not "commence the transaction of its business or the construction of its works within one year from the date of its incorporation * * *." We think that this section is not applicable. (See Revised Codes Mont.1947, § 15-1201) Valley is controlled by Revised Codes Mont. 1947, § 5-207, a part of the Bank Act, which authorizes, but does not require, the Superintendent to cancel his certificate of authorization if a bank fails to commence business within ninety days. The Superintendent has not done so; on the contrary, he has continued to recognize Valley as a bank.
 
 
 19
 Furthermore, Section 15-808 limits its effect to an action by the state at the suit of the attorney general. He is not here. Appellants lack standing under the section. (Dunham v. Natural Bridge Ranch Co., 1944, 115 Mont. 579, 147 P.2d 902; Daily v. Marshall, 1913, 47 Mont. 377, 133 P. 681, 684-685; see Barnes v. Smith, 1913, 48 Mont. 309, 137 P. 541, 543).
 
 
 20
 Since First Bank Stock acquired the stock of Valley before May 9, 1956, and since Valley was then, and has continued to be, a bank within the meaning of the Act, there is no violation of the Bank Holding Company Act.
 
 
 21
 2. There was no violation of the Montana statute against branch banking.
 
 
 22
 Appellants contend that, as to Count II of the complaint, the court granted appellees' motion to dismiss rather than their motion for summary judgment, and that this is clearly error because Count II does state a claim upon which relief can be granted (Rule 12(b), F.R.Civ.P., 28 U.S.C.A.) The matter was heard and decided upon the record described at the beginning of this opinion, and was thus, by the operation of Rule 12(b) itself, a decision on motion for summary judgment. The contention is frivolous.
 
 
 23
 On the merits, the decision is correct. The Montana Bank Act (Revised Codes Mont.1947, § 5-1028) provides: "No bank shall maintain any branch bank * * *", and 12 U.S.C.A. § 36 prohibits a national bank from operating a branch in Montana, since the latter forbids branch banking. Appellants concede that holding company banking is not branch banking. They assert, however, that they "expect to be able to prove that [appellees] are operating as a single branch banking system in Billings, Montana, and * * * contend that, in such circumstances, the Court will pierce the corporate veil, if necessary, to enforce the law."
 
 
 24
 We find nothing in the agreed facts indicating that Valley is a "branch" of Midland. What must appellants show, to establish that Valley is such a branch? They must show, that, in substance, Midland is doing business through the instrumentality of Valley, or vice versa, in the same way as if the institutions were one. (Cf. Camden Trust Co. v. Gidney, D.C. Cir., 1962, 301 F.2d 521) We do not agree with appellees that the fact that the two banks are separate corporate organizations demonstrates conclusively that one is not a branch of the other. In the banking field, as elsewhere, courts have power to "pierce the corporate veil" when the realities require it.
 
 
 25
 On the other hand, it is not enough for appellants to show that common control, through stock ownership by First Bank Stock, which participates actively in the management of its subsidiaries, produces cooperation or even eliminates competition between the subsidiaries. This is a usual, although not necessary, result of common ownership and control.
 
 
 26
 Is there anything in the record showing that there is a "genuine issue as to any material fact" relating to this contention (Rule 56(c), F.R.Civ.P.)? We find nothing so showing. In the pretrial order, the agreed facts are recited at length. They show, among other things, and in addition to the facts previously recited, the following: At the time of judgment, the two banks had but one common director, the attorney for Midland; each is a separate corporation, with its own capital, surplus, and undivided profits; each has a separate banking house; each has its own employees; one is a national bank, the other a state bank, and thus they operate under different statutes and are supervised by different authorities; Midland is and will be Valley's chief (but not its only) correspondent bank; Midland will probably (we think the "probably" can be eliminated) participate in taking over the excess of certain loans which Valley is unable to handle; Valley is not a member of the Billings clearing house, and Billings banks may present Valley checks through Midland for clearing; this has in some cases occurred; moneys deposited with Valley are physically delivered to Midland at the close of each day's business; Valley's temporary quarters has no vault; moneys so delivered are kept in a locked container and returned to Valley next day; Valley customers may use Midland's night depository, for which Valley pays Midland a nominal ($10) monthly rent; Valley has and maintains its own books of account, has its own stationery, checks and forms, none of which mentions Midland; since November 1, 1960 no money has been deposited at Valley's banking house to be credited to the account of the depositors at Midland, and no money has been deposited at Midland's banking house to be credited to the account of the depositors at Valley; no customer of Midland has made a withdrawal at Valley's banking house of money on deposit at Midland; no customer of Valley has made any withdrawal at Midland's banking house of money on deposit at Valley; since September 27, 1960, no officer or employee of Midland has acted as an officer, director, employee, or authorized agent of Valley, and no officer or employee of Valley has acted as an officer, director, employee, or authorized agent of Midland.
 
 
 27
 It is plain to us that all of these facts, taken together, affirmatively show that Valley is not a branch of Midland. The unitary type of operation characteristic of branch banking is not present. The mere fact that First Bank Stock has power to cause Valley to function as if it were a branch of Midland is not enough. The foregoing facts show that it has not so abused the power that it has.
 
 
 28
 Under these circumstances, unless appellants made an evidentiary showing which, if accepted, could be held by a trier of fact to permit a contrary conclusion, there was no genuine issue of fact to be tried. Under Rule 56, F.R.Civ.P., if defendants make a showing that would entitle them to judgment unless contradicted, the plaintiffs then have a duty to show that such contradiction is possible; they cannot rest upon the allegations of their complaint. The whole purpose of Rule 56 would be frustrated if they could.
 
 
 29
 Here, no such showing was made by appellants. The pre-trial order, under the heading "Contentions of the Parties", states:
 
 
 30
 "With respect to paragraphs 32, 44, 47, 58, 62, 69, 73 and 75 hereinabove, the parties are not in complete agreement. The area of disagreement in these paragraphs appears from the paragraphs themselves.
 
 
 31
 "Plaintiffs contend that these areas of disagreement do not preclude the Court's decision of Count I of the Amended Complaint on their Motion for Summary Judgment on the legal issues raised. Plaintiffs contend that Count II is not ripe for decision because of the issues raised in paragraphs 47, 62, 69 and 73.
 
 
 32
 "Defendants contend that both Count I and Count II are ripe for decision on their motions to dismiss and their Motion for Summary Judgment. Defendants contend that the issues of fact which remain are not genuine issues as to material facts. Defendants contend that the issues raised by paragraph 62 are issues of law and not issues of fact."
 
 
 33
 Appellants did not ask leave to produce other evidence, either by conducting further discovery, or at all. If they had other evidence, the time had arrived to produce, not necessarily all of it, but at least enough to show a genuine issue of fact to be tried.
 
 
 34
 Specific reliance is placed by appellants, in the pre-trial order, upon four paragraphs of the statement of agreed facts — 47, 62, 69 and 73. None raises a triable issue. Paragraph 47 refers to a newspaper account of the opening of a second bank, owned by First Bank Stock, in Great Falls, in which the other bank owned by First Bank Stock is referred to as "the parent bank". How this can be proof of anything in this case is quite beyond our comprehension.
 
 
 35
 Paragraph 62 indicates a disagreement between the parties as to the extent of control by First Bank Stock which is "possible". Assuming that the possibility is unlimited, this is not the question. The question is, has the control been so exercised as to make Valley in fact a branch of Midland? Nothing in paragraph 62 indicates that it has.
 
 
 36
 Paragraph 69 states that certain officers of Midland have mentioned Valley in soliciting deposits for Midland, and have stated "We are opening a bank in West Billings Shopping Center". There is nothing here raising a triable issue as to whether Valley is a branch of Midland.
 
 
 37
 Paragraph 73 describes the differences between "city banks" and "country banks" and states that Midland has correspondent relationships with 30 country banks, of which 8 are subsidiaries of First Bank Stock. It does not even state that there is or will be such a relationship between Midland and Valley, but only that the parties disagree as to whether that relationship "is purely a correspondent bank relationship". This is hardly evidence of a triable issue.
 
 
 38
 Appellants assert that they are not confined to these four paragraphs. On that assumption, we have searched the entire record, and we can find no evidence that raises a triable issue as to whether Valley is a branch of Midland.
 
 
 39
 Affirmed.