JAMES TROGLIA, Plaintiff and Respondent, v. LOUIS BARTOLETTI, KATE BARTOLETTI, DR. E. A. BARTOLETTI and THELMA CASEY, Defendants and Appellants.

No. 11539.
Submitted Jan. 13, 1969.
Decided Feb. 21, 1969.
451 P.2d 106.

Corette, Smith, Dean & Wellcome, Kendrick Smith (argued), Butte, for defendants and appellants.

R. Lewis Brown, Jr., Doepker & Hennessey, Maurice F. Hennessey (argued), Butte, for plaintiff and respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a temporary order dated June 18, 1968, enjoining and restraining one Louis Bartoletti and all persons taking under him from demanding, as successors in interest of the escrow-seller, the return of all escrow for failure to make payments of interest after written demand therefore under the terms of the escrow agreement.

Acoma Lounge, Incorporated (hereinafter called Acoma Lounge) a Montana corporation, entered into an escrow agreement dated May 17, 1960, to purchase real property known as the Acoma Hotel Building in Butte, Montana. The escrow-seller was Nebraska Investment Company.

About one year later Louis Bartoletti, his wife Kate Bartoletti, and his brother, Eddie Bartoletti, purchased by assignment dated April 17, 1961, all of the rights of Nebraska In-

vestment Company in the escrow. The Bartolettis were then the owners of two-thirds of the stock of Acoma Lounge; the other one-third was owned by James Troglia.

On April 19, 1961 a letter was written on behalf of Louis, Kate and Eddie Bartoletti to the First National Bank of Butte; the bank designated in the original escrow agreement as the escrow holder. The letter instructed the bank to refrain from collecting upon the principal of the escrow agreement and to collect only the interest, until such time as notified in writing by the Bartolettis. At the time of these transactions, and at the time of this action, Louis Bartoletti was president and director and James Troglia was secretary and director of the Acoma Lounge, the escrow purchaser.

In 1963 Eddie Bartoletti died; litigation concerning the ownership of his interest in Acoma Lounge resulted. Detra v. Bartoletti, 150 Mont. 210, 433 P.2d 485 (1967). On May 1, 1966, the suit, out of which this temporary restraining order arose, was filed by James Troglia alleging mismanagement of Acoma Lounge by the Bartolettis and seeking dissolution of the corporation. Nearly two years later, on February 8, 1968, the Bartolettis wrote the bank and began to exercise their rights under the escrow agreement to terminate that agreement. Acoma Lounge was given 60 days' notice that it was in default on interest of $4,063.24 and principal of $23,646.42.

At the end of the 60 days James Troglia, the minority stockholder in Acoma Lounge, tendered the amount of the unpaid interest upon the condition that Acoma Lounge would execute a note to him for that amount. This tender was refused and on April 15, 1968 James Troglia filed and secured an order to show cause and a temporary restraining order; restraining the Bartolettis from obtaining the escrow agreement from the bank on the basis of the default of the Acoma Lounge. At the hearing the court heard one witness, Louis Bartoletti, admitted six exhibits and then made findings of fact and con-

clusions of law in support of and continuing the temporary restraining order.

The exhibits included the escrow agreement; the assignment of that agreement to the Bartolettis; correspondence instructing the bank not to collect the principal; correspondence seeking possession of the escrow papers due to the default of Acoma Lounge; notice to the Acoma Lounge as required by the escrow agreement; and the tender of the unpaid interest by James Troglia.

Louis Bartoletti testified generally to the following: At some time between the purchase of the escrow agreement by the Bartolettis and this action, Louis Bartoletti took over direct management of the Acoma Lounge from James Troglia. At the time Bartoletti took over the Acoma Lounge was in debt to two banks, to some carpenters and plumbers and other creditors, plus that owing under the escrow agreement; the payments of principal having been suspended. That while managing the Acoma Lounge he worked two shifts and only paid himself for one; that out of the income of the Lounge he paid on the bills, other than the escrow; and that during this period he had reduced the indebtedness from approximately $15,000 to $5,000. Bartoletti alleged that during this period the Acoma Lounge became indebted to him in approximately the amount of $14,000 for unpaid wages due him for the second shift which amount included some equipment purchased by him personally; that the corporation could not undertake the note required by Mr. Troglia's conditional offer unless it forgave the amount owing to him.

He further testified that he had held no stockholders' or directors' meetings to determine a way in which the payments might be made on the escrow during the period he was paying off the other notes and debts. He did not call any meetings to determine how the corporation should react to the conditional offer of Mr. Troglia. He called no meeting to

determine if the building was marketable or if it in any way could be liquidated and the equity of the corporation salvaged.

On the record presented here it would appear that the sole asset of the corporation is its interest in the Acoma Hotel building.

In granting the injunction the lower court made the following findings which are disputed by the appellants:

"6. That in said operation he paid certain bills, accounts and debts of the corporation; that the payment thereof was as he, Louis Bartoletti, determined; that he, Louis Bartoletti, failed and refused to pay the money due on the assignment, he, having full knowledge that without the possession and ownership of the said real property the corporation was nonexistent.

"7. That Louis Bartoletti undertook the duties of operating the Acoma Lounge and performed work and services in said operation; that his work and services might be considered gratuitous, no contract or agreement thereof being in existence, or, as he testified, might have been to benefit himself, his wife, son and daughter.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"9. That any interest Louis Bartoletti, individually, has in and to said real property, or the interest anyone has acquired by and through him by assignment, deed, transfer or otherwise, is as trustee or trustees for said Acoma Lounge Corporation."

The sole issue is whether there is sufficient evidence to support the trial court's findings of fact and conclusions of law.

It is the rule in this state that although a director occupies a fiduciary relation to the stockholders, he is nevertheless entitled to demand payment of an honest debt due him from the corporation of which he is a director. Dunham v. Natural Bridge Ranch Co., 115 Mont. 579, 147 P.2d 902 (1944). However, this rule must be tempered with the qualification that there are circumstances under which equity will

not permit him to do so. 19 C.J.S. Corporations § 800; Bellaire Securities Corporation v. Brown, 124 Fla. 47, 168 So. 625, 640 (1936); Stack v. Welder, 137 Cal. App. 647, 31 P.2d 426, 429 (1934); Todd v. Temple Hospital Ass'n, 96 Cal.App. 42, 273 P. 595, 597 (1928).

One jurisdiction has gone so far as to say that to purchase the obligation of the corporation is a violation of the director's fiduciary duty. Weissman v. A. Weissman, Inc., 374 Pa. 470, 97 A.2d 870 (1953).

There are some significant differences between the Dunham case, supra, and the case before us. Dunham involves the collection of an unsecured note; in this case, if the Bartolettis are able to proceed, the equity of the corporation will be lost. The escrow agreement upon termination converts the amounts paid into reasonable rent.

In addition, plaintiff-respondent has not asked for a permanent injunction but for a temporary injunction pending a final determination in the suit for dissolution of the corporation.

The object of a preliminary injunction is to preserve the status quo. Hansen v. Galiger, 123 Mont. 101, 113, 208 P.2d 1049 (1949). In the instant case the status quo would appear to be the position the parties were in at the time the suit for dissolution was filed in May 1966. At that time the suspension of payments of principal was still in effect and Louis Bartoletti as manager of the Acoma Lounge was making few, if any, payments of interest.

■ ■ However, injunctions are extraordinary remedies granted with caution and in the exercise of sound judicial discretion. State ex rel. Blackwood v. Lutes, 142 Mont. 29, 381 P.2d 479 (1963); Paradise Rainbows v. Fish & Game Commission, 148 Mont. 412, 421 P.2d 717 (1966). A party applying for a temporary injunction has the burden of establishing a prima facie right to such relief, granting that it is not necessary to make out such a case as would entitle the pleader to relief at a final hearing. Mountain States Tel. &

Tel. Co. v. Public Service Comm., 135 Mont. 170, 179, 338 P.2d 1044 (1959).

■ We hold, under these guidelines, that the lower court abused its discretion in making its findings on the basis of the evidence in the record. One witness and six exhibits (none of which had any bearing on the issue of breach of fiduciary duty) were not enough to support the findings. Louis Bartoletti has a right to default the corporation on the escrow. Here there was insufficient evidence to find that in having "failed and refused" to pay what was due on the assignment, he was guilty of a breach of trust. No concrete evidence was presented as to the financial condition of the corporation at the time of such failure and refusal. The corporation's earnings, expenses, debts, etc. are nowhere in the record.

■ The only evidence as to any contract or other arrangement between Louis Bartoletti and the corporation came from Mr. Bartoletti himself; it does not support the finding that "his work and services might be considered gratuitous." He admitted he raised his salary, he was the manager of the business, he was working not one but two shifts seven days a week, and being paid only for one shift. No contrary evidence was presented; no law was cited in respondent's short brief supporting the contention that the unpaid amounts were not legitimate debts of the corporation.

■ The finding that in acquiring the escrow by assignment Louis Bartoletti did so as trustee for the corporation is contrary to the law of this state. Dunham, supra, and cases cited therein.

Under these circumstances we have no choice but to dissolve the injunction and remand this case to the lower court for further proceedings consistent with this opinion.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICE BONNER, concur.

372

MR. JUSTICES HASWELL and CASTLES, concurring in the result reached by the majority but not all that is said therein.

In our view the injunction pendente lite must be set aside solely on the basis of insufficiency of the evidence to support the basic finding of fact on which the injunction rests.

The central finding of fact of the district court is that Louis Bartoletti's interest in the Acoma Lounge is held as trustee for the corporation. The evidence directly opposes this finding. The assignment of the escrow-seller's interest in the Acoma Lounge is to "Louis Bartoletti, Kate Bartoletti, and Eddie Bartoletti, as joint tenants and not as tenants in common, and with full right of survivorship". The Bartolettis acquired this assignment by purchase. This assignment was approved in writing by the corporation by Louis Bartoletti as president and by *James Troglia* (the plaintiff herein) as secretary.

Impressing a trust for the benefit of the corporation upon this acquisition is unwarranted here because (1) an honest debt was owed by the corporation to the Bartolettis (2) full disclosure to and assent by plaintiff herein to the acquisition by the Bartolettis of the property.

In our opinion the foregoing constitutes the correct basis for the result.