471 P.2d 161

**CLEARFIELD STATE BANK, a corporation, Plaintiff and Appellant,**

v.

**W. S. BRIMHALL, Commissioner of Financial Institutions of the State of Utah, and Bank of Northern Utah, an unincorporated association, Defendants and Respondents.**

No. 11900.
Supreme Court of Utah.
June 11, 1970.

Raymond W. Gee, Salt Lake City, for appellant.

H. Wright Volker, Asst. Atty. Gen., Salt Lake City, J. Duffy Palmer, Clearfield, for respondents.

HENRIOD, Justice:

Appeal from a judgment of the lower court, affirming, on review,[1] an order of the Financial Institutions Commissioner, approving the proposed establishment of a "unit" bank in Clearfield, Utah. Affirmed.

The proposed Bank of Northern Utah applied for authority to operate a *unit* bank[2] in Clearfield, Utah. The plaintiff here, Clearfield State Bank, is an operator of an existing bank in Clearfield, and protestant here.

Plaintiff says that 1) the applicant, by indirection and subterfuge, is seeking a branch bank for the Bank of Utah in violation of Title 7–3–6, U.C.A.1953, having to do with *branch*, not unit banks; that 2) the Commissioner capriciously considered evidence and denied appellant's right to see it or test its probative value; 3) that applicant did not possess the necessary capital statutorily required; 4) that applicant's proposed facility was in such close proximity to appellant's as to make improbable a successful operation; and 5) that applicant has shown no demand for the proposed services.

As to 3, 4 and 5 above, an examination of the record reflects that with respect to these points the findings and conclusions based thereon were supported by believable, substantial, competent,—and perhaps by some questionable, but nonprejudicial evidence, most of which was controversial.

1. Title 7–1–26, U.C.A.1953 (as amended, 7–1–26(4), Pocket Supp. Vol. I, pp. 279–80).

2. Title 7–1–26, U.C.A.1953, as amended.

Points 1 and 2 supra, do merit our attention, since it seems elementary that if privileges under a statute are sought, a protest is lodged thereto, and a contention is made of nondisclosure and employment of a subterfuge by him seeking the favor, he whose interests are to be invaded should not be denied the right to see and probe the fides or fiction of the claim; and that a full airing of such contention should be an order of the day, since evasion of corporate identity is suspect.[3]

Appellant claims that the Bank of Utah, an existing bank, not a party to this litigation, is the real party in interest, and that the applicant, Bank of *Northern* Utah, is but its alter ego or at least its controlled illegitimate offspring. It says that controlling stock ownership will reside with identical individuals as to both banks.[4] Plaintiff also points out that both banks will have the same Cashier[5] who will work without compensation for the new bank if authorized to operate. Also, the architecture and name of the proposed bank are so similar as to suggest operation by the Bank of Utah, not by a new, different and independent banking facility. There is no question but that the Commissioner received evidence of stock ownership and control of the Bank of Utah and the Bank of Ben Lomond, neither a litigant here, which admittedly would show at least similar ownership and control by certain individuals of the applicant here.

Plaintiff urges and the record reveals that circumstances concerning such ownership and control were admitted in confidence, without opportunity to test it on cross-examination. Plaintiff contends that, given the opportunity, it could demonstrate a subterfuge for statutory evasion. Without such evidence, we are compelled to affirm in toto. A majority of the court is of the opinion that irrespective of the evidence mentioned, apparently having to do with stock ownership in other banks, and being of a type that would not be dispositive here, the trial court should be affirmed without qualification, and it is so ordered.[6]

3. 1 Fletcher, Cyc. Corp. 240-41, " * * * courts will disregard the corporation or its entity and look at the substance and reality of the matter."

4. This circumstance in and of itself is not controlling. Our statutes do not prohibit such an arrangement. Braeburn Securities Corporation v. Smith, 15 Ill.2d 55, 153 N.E.2d 806 (1958), cited by appellant, is not in point, since a statute there interdicted certain interlocking banking corporation stock ownership.

5. 4 Michie, Banks & Banking, pp. 96-7: "The powers and duties of a cashier, in virtue of his office, are much greater than the president's, etc. * * *"

6. Without soliciting any support for my position, I am inclined to the view that the protestant should have the right, on cross-examination, to test the evidence admitted in confidence, irrespective of what we think it was and no matter how trivial it might appear, else the door is opened for an administrative agency to be selective in admitting evidence without a correlative right of confrontation. If the evidence is trivial or thought not to be

**342**

CROCKETT, C. J., and TUCKETT, J. concur.

CALLISTER, J., concurs in the opinion of HENRIOD, J., and in the views expressed in footnote 6.

ELLETT, Justice (concurring).

I concur in affirming the judgment of the trial court, and I wish to detail my reasons for doing so. I think the ownership of the stock in the banks is immaterial. In the first place, the commissioner has the information as to the ownership of stock in the banks involved, and remanding will not add to his knowledge of the facts. In the second place the appellant knows that the stockholders who own the controlling interest in the First Security Corporation also own the controlling interest in both the First Security State Bank and in the First Security Bank, N.A. It also knows from testimony given that the stockholders who own 89.98 percent of the stock of the Bank of Utah also own 73.55 percent of the stock of the Bank of Ben Lomond. In eli-

citing this testimony, counsel for the protestant, the appellant herein, said he wanted "to establish that the control of the Bank of Utah and the Bank of Ben Lomond is also the controlling interest of the applicant bank" (Bank of Northern Utah).

Counsel for Clearfield State Bank was cross-examining one of the applicant's witnesses. The matter had not been gone into on direct examination, and the witness said he did not know the ownership of stock in the other banks, but with permission of the officers and staff of the Bank of Utah he could get the information. Appellant's counsel could have subpoenaed the records of the particular banks if he thought the evidence material and admissible, but he did not do so. The commissioner refused to order the witness to go into the books and private records of a company not a party to the proceedings in order to get the information to help the protestant's case. The witness said he could not give the names of the stockholders from memory even though he was vice president and cashier of the Bank of Utah, and there is

dispositive or substantial, it should not be received at all. If received at all, it should be subject to the same rule that I always have thought universally applied to admitted evidence: a right to test its probative value on cross-examination. Anent this observation, see the language of Atchison T. & S. F. Ry. v. Commerce Comm., 335 Ill. 624, 167 N.E. 831, 837, quoted with approval in our own decision in Los Angeles & S. L. R. v. P. U. C., 81 Utah 286, at 297, 17 P.2d

287, at 291 (1932), as follows: "The commissioners cannot act on their own information. Their findings must be based on evidence presented in the case, with an opportunity to all parties to know of the evidence to be submitted or considered, to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal, and nothing can be treated as evidence which is not introduced as such."

no evidence that he could do so. He also stated that three of the officers and nine of the directors of the Bank of Utah were also officers and directors of the Bank of Ben Lomond. He testified that he himself had subscribed to 500 shares of the stock of the applicant bank and was the proposed cashier and director thereof.

Regardless of whether the exact detail of stock ownership was given to the commissioner, I believe the matter is of no importance as is shown by the following cases:

In Nemirow v. Bloom, 445 P.2d 214 (Colo.1968), a holding company owned all of the stock of the five industrial banks in Denver and also would own all of the voting stock of the proposed bank to be located in Colorado Springs. There would be common officers and directors of the proposed bank, the holding company, and the five banks in Denver. It was contended in that case that the proposed bank was a mere branch. The court said at page 215:

> We hold that the proposed industrial bank would not be a branch bank, because the record shows as a matter of law that it has or will have all the attributes of a separate operational entity, both legally and financially.

See also Goldy v. Crane, 445 P.2d 212 (Colo.1968).

The case of First National Bank in Billings v. First Bank Stock. Corp., 306 F.2d 937 (C.A. 9th Cir. 1962), held that it was not enough to show common control through common stock ownership and management participation to constitute a branch bank, but that it must be shown that the alleged branch is doing business with the alleged parent in the same way as if the institutions were one, and that it must be shown that the "unitary type of operation," which is the hallmark of a branch bank, is present.

The definition of a branch bank was set out in the case of In re Application of Kenilworth State Bank, 49 N.J. 330, 230 A.2d 377, 380 (1967) as follows:

> The distinctions between branch, chain and group banking are known generally in banking, legal and legislative circles. A branch is not a separate corporation or legal entity but is an office or agency operated by the legal entity which operates the main bank. It has no separate board of directors or capital structure, its deposits are pooled with those of the main bank, and its loan limits are based on the main bank's capital structure.
> * * *

It is my opinion that neither one of two separate corporate banks, each with its own separate capital, can be an alter ego of the other. In the matter now before us, the Bank of Northern Utah is a separate entity with its own stock records, its own corporate assets separate and apart from that of all other banks. Its stockholders

and directors constitute a distinct group, although the individual members may also be stockholders, directors, and officers of other corporate entities.

Even if appellant could establish by its own witnesses or otherwise that the stock-ownership in the proposed bank is identical to that in several other banks, it in my opinion would not constitute a branch bank. It still would be a unit bank, and the district court did not err in affirming the order made by the commissioner.